No. 34,038

State Bank of Hazelton, *Appellee*, v. J. R. Goodan and The Corwin State Bank, *Appellants*.

(84 P. 2d 850)

Opinion filed December 10, 1938.

*E. C. Wilcox* and *J. Howard Wilcox,* both of Anthony, for the appellants.

*Riley W. MacGregor* and *H. Hobble, Jr.,* both of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action in replevin between two banks for the possession of an automobile on which each held a mortgage. Plaintiff prevailed, and defendants appeal.

Some years ago one J. R. Goodan had been an employee of the plaintiff bank. Later he became cashier of the defendant bank. He continued, however, to have some credit standing in the plaintiff bank, borrowing small sums from it, and giving first one automobile and then another as security.

On June 10, 1936, Goodan's father was indebted to the plaintiff bank in the sum of $1,120; and he and J. R. Goodan gave their promissory note for that amount, payable on June 10, 1937. At or about the time of its execution some building and loan stock was put up as security for the payment of the note, and J. R. Goodan also assigned as additional security a judgment which apparently was worthless, but details concerning it are wanting in the record.

On January 22, 1937, Goodan executed to the plaintiff bank a chattel mortgage on the automobile in controversy and it was promptly recorded in Barber county. The amount of indebtedness it purported to secure was $450, although no note evidencing an indebtedness of Goodan for that amount was made nor intended to be made. Plaintiff adduced evidence to the effect that the mortgage was given as security for the note for $1,120 executed by Goodan

and his father in the preceding June, but that for appearance sake the sum for which the automobile was mortgaged was named as $450, on the idea that a mortgage on such an automobile as Goodan's (a 1936 Chevrolet sedan) for the full amount of the note would not look very well in an inspection of the bank's assets. Moreover, the $1,120 was also secured by some building and loan stock which was actually worth a substantial amount, as evidenced by the fact that some three months after the giving of the mortgage in controversy the building and loan stock was sold for $941.42 and that amount credited on the $1,120 note it had been pledged to secure.

The foregoing briefly states the substance of plaintiff's petition and the evidence given in its support.

The defense centered upon two main points—that the mortgage under which plaintiff claimed the automobile had no relation whatever to the $1,120 note, and that in fact it had merely been given by Goodan as part of a scheme on his part to prevent its possible seizure to satisfy a claim or indebtedness due from Goodan to a bank in Alva, Okla. The latter point may now be ignored, however, because it turned squarely on an issue of veracity between Skaggs, the cashier of the plaintiff bank, and Goodan. The defendant bank, however, does have a talking point against the validity of plaintiff's mortgage because of some recitals in the instrument itself, which reads:

"This mortgage is taken in renewal of one dated July 26, 1935, on 1934 Chevrolet coach. . . . Provided . . . that if the said parties of the first part shall pay to said party of the second part . . . the aforesaid sum of four hundred fifty and no/100 dollars with interest thereon according to the terms of a *certain promissory note* made by the parties of the first part and payable to the order of the party of the second part at . . . (plaintiff's bank), dated 1/22/37, due six months from date . . . for $450 with interest thereon at the rate of ten percent per annum from maturity, . . . then these provisions and everything herein contained shall be void. . . ."

While the record tends to show that the $1,120 note was a renewal of an earlier indebtedness of Goodan's father, and that one or more earlier automobiles of Goodan had been mortgaged to secure it, there was, of course, no promissory note of $450 of even date for which plaintiff's mortgage was security. If that fact should operate to invalidate the mortgage, there is no help for it. There was, however, an indebtedness (the $1,120 note), and the oral testimony to which the court gave credence was that the mortgage was intended as partial security for that indebtedness. At the time this mortgage was given it could not be known just how much of that in-

debtedness would be extinguished when the pledged building and loan stock should be sold; and it may have been obvious by January 22, 1937, when plaintiff's mortgage was executed, that the judgment which Goodan had assigned to the plaintiff was worthless. Conceding that the recitals in the mortgage were inaccurate, and that the transaction was not strictly regular, we cannot say that the trial court was in error when it made its preliminary ruling—

"I think there is sufficient to put you on your inquiry that there was an indebtedness secured thereby. I think that is sufficient."

It may be well, at this point, to state the basis of defendant's claim to the automobile. When Goodan mortgaged it to the plaintiff, he was then serving as cashier of the defendant bank. Apparently he loaned himself $275 of the defendant bank's funds and executed his note therefor, dated May 2, 1937, and payable on demand. Some time later he absconded, taking $200 of the bank's money with him. Later he surrendered to some officer of the law, and since that time he has been in jail. Before his surrender, however, he executed a note dated December 29, 1937, for $200 in favor of the defendant bank as an acknowledgment of indebtedness to it for the money he had taken from the bank when he absconded. At the same time he executed to the bank the chattel mortgage under which it claims the automobile. This mortgage purported to be given to secure Goodan's two notes—the one he had given when he loaned himself $275, and the one for $200, which was the amount of the bank's funds he carried off when he absconded.

We do not think defendant bank's claim to this automobile can stand against the plaintiff bank's claim thereto. Granting the irregularities of the latter, which are strongly and adroitly urged by counsel for appellant, we think plaintiff's claim was better than defendant's. Either the Corwin State Bank was charged with notice of plaintiff's claim at the time its junior mortgage of December 29, 1937, was executed, or its mortgage is worthless for any purpose. A chattel mortgage is a contract between two or more parties, like all other contracts. Who acted for the Corwin State Bank as one of the parties? If Goodan did, he knew of the prior mortgage of the plaintiff bank. If Goodan did not act for the bank when, conscience stricken or to serve some private end, he sent back from his fugitive retreat the chattel mortgage under which defendant claims, it was not enforceable against the rights of third parties because it was neither given nor received pursuant to a regular business transaction.

Counsel for each litigant cite some of our own cases which they think are analogous to the one at bar. We have examined them, but do not find them helpful. Textbook authorities are also cited, 5 R. C. L. 419, and 10 Am. Jur., Chattel Mortgages, 761-763. Without quoting therefrom at length we think the rules they state incline to support the plaintiff's position, particularly the latter, where it says:

"If the mortgage by mistake or want of knowledge at the time has been given for more or less than the actual indebtedness and no deception or fraud was intended by either party, such mortgage will not be invalidated thereby. Nor will failure to describe correctly the note secured by the mortgage invalidate it." (p. 761.)

Error is also urged because the trial court refused to give the jury an instruction touching the proper significance to be attached to defendant's evidence that plaintiff's mortgage was merely given to cover up Goodan's property so as to prevent its being subjected to the satisfaction of his Oklahoma debts. This criticism is ill-founded. The court's instructions dealt fairly with that phase of the controversy.

Complaint is made of instructions 7 and 9. In No. 7 the jury were told that one of the main questions to be determined by them was whether plaintiff's mortgage was given by Goodan to secure an indebtedness owed by him to the plaintiff bank. In No. 9 the jury was instructed that if the mortgage was given to secure the payment of the $1,120 note, or any part of that indebtedness remaining unpaid, then

". . . . plaintiff had a lien and special interest in and upon the automobile in controversy to the extent of the amount remaining unpaid upon the indebtedness evidenced by said note . . . then I say to you that plaintiff's interest in and lien upon said automobile was and is paramount to the claims of the said defendants to the extent of its lien and that after due demand therefor upon said defendants the plaintiff was entitled to the possession of said automobile and that if said defendants refused to give the plaintiff possession of said automobile after such demand the said defendants wrongfully detained the possession of said automobile from the plaintiff and you should so find."

These instructions correctly stated the pertinent law.

It is finally contended that the judgment was not supported by the evidence. This contention cannot be sustained.

Neither material error nor miscarriage of justice is made to appear in this record. The judgment is therefore affirmed.