No. 33,727

CHARLEY NIEBAUER, *Appellant*, v. RAY BIVINS and HAZEL BIVINS, *Appellees;* J. A. TRINDLE and A. NEAR (*Defendants*).

(87 P. 2d 619)

Opinion filed March 4, 1939.

*Joe T. Rogers,* of Wichita, and *George T. Terrill,* of Elkhart, for the appellant.

*A. E. Kramer* and *L. L. Morgan,* both of Hugoton, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action in replevin for the possession of certain horses and cattle and other personal property on which plaintiff held a chattel mortgage. A redelivery bond was given, and the action proceeded to judgment in favor of the defendants and their bondsmen, and eventuated in this appeal.

It appears that in January, 1933, and for some years prior thereto, one Martha L. Sibon was the owner of 800 acres of land in Stevens county. She had been a widow since 1921, and lived on this land with her son. She owned the usual equipment for the operation of a ranch or farm in that locality—horses, cattle, hogs, feed and seed, and a miscellaneous lot of farm machinery. Mrs. Sibon was of German birth. The plaintiff, Charles Niebauer, was Austrian born. According to the testimony of both, Niebauer had been loaning Mrs.

Sibon various sums of money over a period of several years, for which no formal evidences of indebtedness had been given until January 26, 1933, when Mrs. Sibon executed and delivered to Niebauer her promissory note for $3,000, payable in one year, with 10 percent interest from date. At the same time, and to secure the payment of this note, Mrs. Sibon executed and delivered to Niebauer a chattel mortgage on all the livestock and other chattels constituting the farming equipment of her Stevens county ranch. A complete list of this mortgaged property was as follows:

"Forty-one head of cattle more particularly described as follows:

"One Red Durham bull, 29 head cows, mixed colors, eleven head yearlings, mixed colors.

"Twenty-five head hogs, mixed colors, running from 75 lbs. to 300 lbs. in weight.

"Fifteen head horses and mares, all smooth mouth, mixed colors.

"4,000 bushels threshed kafir corn.

"All farm machinery now owned by me [Mrs. Sibon] on sec. 3-34-39, such as header, barges, wagons, listers, cultivators, knife sleds, harrow, auto trailer.

"One Chevrolet coupé, '29 model, engine number 968246."

The mortgage contained the familiar recital that if at any time the mortgagee should deem the indebtedness insecure he was authorized to enter the premises where the mortgaged chattels were kept and to remove and sell them at public or private sale, with or without notice, and apply the proceeds to the payment of the debt and costs and render any remaining sum to the mortgagor. This mortgage was filed of record on January 27, 1933.

Following this transaction, on February 27, 1933, Mrs. Sibon leased her ranch to Ray Bivins for the term of one year to end on March 1, 1934, and in the same contract she agreed that Bivins should have the use of the horses and cattle for their care and keep, and likewise the use of the farm machinery, tools and other equipment. The agreed rental was to be one-third of all crops delivered at market free of cost to the landlord. Aside from constructive notice of the mortgage covering all this chattel property, Bivins was also personally apprized of it. Niebauer likewise was aware of the lease and that the property on which he held the mortgage was to be put into Bivins' possession, along with the farm itself.

Bivins was let into possession of the land and personalty about March 1, 1933. A large quantity of threshed kafir corn which was covered by Niebauer's mortgage was stored on the farm. Bivins used a considerable amount of this grain, and some of it was sold

and Mrs. Sibon received the proceeds. On account of this disposition of the mortgaged kafir corn, Bivins and Mrs. Sibon executed to Niebauer separate notes and chattel mortgages on their respective shares of the crops then growing on the Sibon land. Bivins' note and mortgage were for $427.80. These were dated July 31, 1933, and to become due on December 1, 1933. This amount was the estimated value of the kafir corn used by Bivins; and his note and chattel mortgage were executed to Niebauer by agreement between Bivins and Mrs. Sibon, because the amount of Niebauer's chattel security had been diminished to that extent. For a like reason Mrs. Sibon executed to Niebauer another chattel mortgage on her share of the growing crops, as additional security for the payment of her $3,000 note of January 26. This additional chattel mortgage was dated on October 3, 1933. A number of hogs which had been covered by Niebauer's mortgage of January 26 were sold, and he received the proceeds, about $150, to apply on Mrs. Sibon's indebtedness to him.

On October 31, 1933, Niebauer commenced this action against Ray Bivins and wife. In his petition he alleged the facts concerning Mrs. Sibon's chattel mortgage executed to him on January 26, 1933, and the further execution to him of another chattel mortgage dated October 3, 1933, by Mrs. Sibon on her one-third share (as landlord) of certain crops growing on her land then under lease to Bivins, which mortgage was given as additional security for her $3,000 of January 26. Plaintiff further alleged the facts touching the execution and delivery to him, on July 31, 1933, of a promissory note for $427.80 executed by Bivins and wife, for a valuable consideration, which note was secured by Bivins' two-thirds share (as tenant) of certain crops growing on Mrs. Sibon's land.

Plaintiff further alleged that Bivins had possession of all the livestock and other property of Mrs. Sibon on which plaintiff held the chattel mortgage dated January 26, 1933, except two cows, three horses, twenty-five hogs and a Chevrolet coupé. Plaintiff alleged that through carelessness and neglect of Bivins and want of sufficient feed, three of the horses had died; that one heifer, two cows and six calves were missing; and that various items of the other chattel property covered by plaintiff's mortgage had been wrecked.

Plaintiff alleged that because of the foregoing allegations of fact he deemed himself insecure, and asserted his right as chattel mortgage holder to take immediate possession of the remaining property covered by his mortgage. He further alleged that Bivins had re-

moved from the state of Kansas to Oklahoma, and only returned to Kansas occasionally in the nighttime or on Sunday, when business with him could not be legally transacted; and that Bivins had told divers persons he would retain possession of the mortgaged property as long as he could; and that a demand on him for its surrender would be unavailing.

Paragraph XII of plaintiff's petition set out the list of property covered by his mortgages which the defendants Bivins had, or should have, in their possession, substantially as mentioned above, with the following addition, to wit:

"Eighty acres of maize growing on the northeast quarter of section 3, township 34, range 39; 100 acres of maize growing on the southeast quarter of section 34, township 33, range 39; and eighty acres of maize growing on the south half of the south half of section 35, township 33, range 39; all in Stevens county, Kansas; estimated 5,200 bushels,"

all of the aggregate value of $4,348.20. The petition continued:

"That said plaintiff is entitled to the immediate possession of all of said personal property; that he has demanded possession thereof from said defendants; and that said defendants and each of them wrongfully and unlawfully detain the possession thereof from said plaintiff . . ."

This petition concluded with a prayer for an order for the immediate possession of the described property, and that upon the trial plaintiff be given judgment for possession and for costs and other just and equitable relief.

Plaintiff's petition was formally verified.

Attached to this petition as exhibits A, B, C, D, E, and F were copies of Mrs. Sibon's note of January 26, and Bivins' note of July 31; also, Mrs. Sibon's two chattel mortgages to Niebauer; also, the chattel mortgage of Bivins and wife to Niebauer, dated July 31, 1933, on Bivins' share of the crop, given to secure his note of even date. Attached to the petition, also, was a copy of the lease between Mrs. Sibon and Bivins which provided that he should have the use of the mortgaged property for the term of the lease upon his agreement "to take care of the same."

On October 31, 1933, an order of delivery in replevin was issued to the sheriff, describing the property covered by the mortgages of January 26 and October 3, executed by Mrs. Sibon and by Bivins on July 31, all of the estimated value of $4,348.20. Pursuant thereto the sheriff took into his custody all the property specified in the order in replevin except 900 bushels of kafir corn, one Red Durham

bull, twenty-seven cows, a heifer and two sleds. Within twenty-four hours Bivins and wife executed a redelivery bond in the sum of $8,800, which J. A. Trindle and A. Near signed as sureties, whereupon the property seized by the sheriff was returned to Bivins and wife.

To this petition Bivins and wife filed an *unverified* answer on November 30, 1933, in which they admitted the execution and delivery of the notes and mortgages attached to plaintiff's petition. Their answer further alleged that on or about February 27, 1933, and at the time of the execution of the farm lease between Bivins and Mrs. Sibon, and—

". . . being a part of the consideration, the plaintiff [Niebauer] and defendant, Ray Bivins, entered into an oral agreement in which it was agreed that Ray Bivins should keep and use according to the terms of the farm lease all of the personal property therein described until March 1, 1934; that he would not be molested by the mortgagee relative to the personal property covered by said lease and partially covered in the mortgage of plaintiff, marked exhibit B."

Bivins' answer further alleged that by the terms of his farm lease he has a special ownership of all the property covered by Niebauer's chattel mortgage, and that any lien of Niebauer thereon was inferior to that of Bivins. The answer concluded with a prayer that plaintiff take nothing by his petition and that defendants be awarded their costs.

Following this joinder of issues, nothing appears to have been done until December 19, 1934, at which time the two sureties on the redelivery bond, J. A. Trindle and A. Near, filed a so-called plea in abatement, in which they alleged that together with Bivins and wife they had executed the redelivery bond referred to in the action; that Bivins and wife had failed to appear and defend it; and that on December 11, 1934, they, Trindle and Near, had been given leave to plead in the action. They alleged that so much of it as concerned the crops growing on certain parts of the Sibon lands the action should abate, for reasons with which we will not herein be concerned.

Thereafter, and by leave of court and upon their own application, Trindle and Near were further permitted to defend against plaintiff's action in lieu of Bivins and wife and in their own behalf, as sureties on the redelivery bond; and for their *unverified* amended answer to plaintiff's petition they adopted certain parts of the answer of Bivins and wife, expressly including—

"The making, execution and delivery of all of the instruments, copies of which are attached to the plaintiff's petition, marked exhibits 'A' 'B' 'C' 'D' 'E' and 'F.' "

Defendants Trindle and Near also alleged that at the time of the execution of the lease between Mrs. Sibon and Bivins, and as part consideration therefor, Bivins and Niebauer made an oral agreement that all the chattel property covered by Niebauer's mortgage should be kept and used by Bivins for the term of the farm lease, until March 1, 1934, and that Niebauer, as mortgagee, would not molest Bivins concerning that mortgaged property, and that Bivins had complied with the oral agreement and was without fault, whereby Niebauer's mortgage was junior and inferior to Bivins' rights under the lease.

Defendants Trindle and Near answered further, touching the disposition of grain stored on the farm, part of which was used by Bivins, and for which he gave Niebauer a note for $364.56 [exhibit D, $427.80] and a mortgage on his share of the growing crops, but that the exact terms of those instruments were modified by a written agreement signed by Niebauer, and set out in defendants' answer thus:

"AGREEMENT

"To be bought at the price of the grain sold in granary and not to exceed $1.50 per 100, and if sold for less the holder of note allows for reduction then.

"(Signed)    CHARLES NIEBAUER."

They further answered that prior to the filing of this action they were able, ready and willing to pay plaintiff the amount of the Bivins' note, exhibit D, as modified by the written agreement signed by Niebauer, but that he would not consent to any settlement whatsoever. Defendants further answered that they were still ready, able and willing to satisfy that obligation.

Answering further, defendants Trindle and Near alleged that on March 1, 1934, Bivins had relinquished to Mrs. Sibon all right or claim he had to the property covered by Niebauer's mortgage—leaving it on the farm premises owned by Mrs. Sibon according to the terms of the lease; that she permitted the livestock (horses, apparently) to scatter over the neighborhood, and that they were returned to her by neighbors, but she refused to take possession and the property was again scattered and strayed.

The answer of Trindle and Near further alleged that early in April plaintiff notified them that Bivins had left the country and that he was looking to them as sureties on the redelivery bond, and—

"That those defendants, J. A. Trindle and A. Near, after receiving said notice and in good faith and for the purpose of protecting any ownership or interest in the said mortgaged property described in this action, gathered together said strayed livestock and tendered the same to the said Charley Niebauer, by offering to deliver said property to the Charley Niebauer at any place within Stevens county that the said Charley Niebauer might desire, and that the said Charley Niebauer informed these answering defendants that he would not receive said property, but that he would hold these defendants liable for the value of the property by virtue of the redelivery bond that the said defendants had executed.

"That the said defendants, J. A. Trindle and A. Near, after the said Charley Niebauer refused to accept said property, and for the purpose of keeping said property from becoming scattered, strayed, and lost, tendered the same to the said Martha L. Sibon, the owner of said property, but that said Martha L. Sibon refused to take possession of said property."

For a further answer defendants alleged that Mrs. Sibon's note for $3,000 executed to plaintiff, and the chattel mortgage pertaining thereto, were void and unenforceable, for the reason that they were given without consideration, and were executed by Mrs. Sibon to Niebauer "by deceit and fraud and for the purpose of defrauding certain judgment creditors," to wit, Roy K. Dietrich, who had held a judgment against Mrs. Sibon since 1917, and the Hugoton Oil Company, which obtained a judgment against her on January 25, 1933.

Defendants further alleged that the chattel mortgage was void for indefiniteness and uncertainty in the description of the horses, cattle, hogs, grain and farm implements it purported to cover.

Plaintiff's reply contained a general denial, and expressly denied that the note and mortgage were executed fraudulently, and denied that Roy K. Dietrich or any other party held a valid judgment against Mrs. Sibon.

The cause was tried before a jury. The evidence took a wide range, but it was not sufficiently full to show what property was actually left at Mrs. Sibon's farm by Bivens, or which did come into her hands as landlord (or as mortgagor) at the end of the term of Bivens' lease. It is clear from the pleading of Trindle and Near that much of the mortgaged property for whose delivery to plaintiff—if adjudged to be entitled thereto—Trindle and Near had bound themselves in the redelivery bond, was missing, and their own testimony was to the same effect. Most and perhaps all of the cattle except what had died on Bivens' hands either before or after the replevin action was begun and after the redelivery bond

had been given, had been taken out of the county and were sold under an agister's lien for a pasture bill in Stanton county.

Over plaintiff's timely objection, the consideration for the $3,000 note and mortgage was the subject of inquiry. Both Mrs. Sibon and plaintiff testified on that matter, with no positive evidence to the contrary. There was evidence pro and con on the existence of certain judgments held by third parties against Mrs. Sibon. Defendants neither pleaded nor proved an interest or concern in those judgments. As to one of them, Mrs. Sibon testified that she had never heard of it. It was shown in evidence that the $3,000 chattel mortgage had been promptly filed for record, but plaintiff had not listed the note itself for taxation.

In its instructions the trial court took from the jury all consideration of the question of recovery of the tools and implements covered by the chattel mortgage to the value of $50, also consideration of Bivins' share of the crops mentioned in his mortgage to Niebauer dated July 31, 1933.

The jury returned a general verdict in favor of defendants, and answered one special question thus:

"1. Do you find that Martha L. Sibon owed the plaintiff, Charley Niebauer, a sum of money at the time of the execution of the note sued on in this action? A. No."

Judgment was entered accordingly, and plaintiff appeals, urging various trial errors which brought about such a result. It can hardly be gainsaid that the judgment is somewhat surprising, so we will turn at once to the brief of appellees to discover, if we may, what can be said in support of it.

Appellees' counsel first advance the proposition that defendants had the right to show that the note and mortgage from Mrs. Sibon to plaintiff was executed in fraud of certain judgment creditors of Mrs. Sibon. That contention, if true, was no concern of defendants. Those creditors, and they alone, could litigate that matter. Bivins and his bondsmen, defendants herein, had notice of plaintiff's mortgage; they recognized it; they dealt with the plaintiff mortgagee on the fact of its existence. They knew that it antedated Bivins' lease, and of course it antedated defendants' redelivery bond. It is settled law that even if the note and mortgage had been given by Mrs. Sibon to Niebauer in defraud of third-party judgment creditors, they would be void only as to such creditors; such a defense would not be open to attack by defendants, who became concerned with the

mortgaged chattels after the mortgage was executed and after they had notice and knowledge of its existence. (*Sheppard v. Thomas,* 24 Kan. 780; *Voorhis v. Michaelis,* 45 Kan. 255, 25 Pac. 592; *Bank v. Chatten,* 69 Kan. 435, 77 Pac. 96; *Union Nat'l Bank v. Kramer,* 121 Kan. 180, 183-184, 246 Pac. 976; 27 C. J. 470 *et seq.;* 12 R. C. L. 493 *et seq.*)

Another argument in support of the judgment is that there was no consideration for the note and mortgage from Mrs. Sibon to plaintiff. To this contention several answers could be given. The first, and a conclusive one, is that neither Bivins' answer nor the bondsmen's answer was verified, which in legal effect left the note and mortgage admitted, and not open to any defense pleaded or even suggested in the answers of these defendants or either of them. (*Christy v. Kinsinger,* post, p. 437, 87 P. 2d 615.) The trial court should have so ruled as a matter of law. (G. S. 1935, 16-107; 52-301; *Drake v. Seck, Adm'x,* 116 Kan. 717, 229 Pac. 67; *Simpson State Bank v. Downey,* 127 Kan. 828, 275 Pac. 153; *Campbell v. Wilcoxen,* 134 Kan. 500, 7 P. 2d 46; *Boner v. Texas Co.,* 143 Kan. 746, 57 P. 2d 420.)

The rule just stated should have disposed of the point without further ceremony, but if the issue of consideration had been open in this action, the testimony of the mortgagor and mortgagee as to the *bona fides* of the consideration was the only evidence on the subject; and while a jury was not bound to believe their testimony, their disbelief gave no excuse for their baseless finding of fact to the contrary. Moreover, a chattel mortgage is valid and enforceable although the actual consideration may vary materially from its recited terms. (*State Bank of Hazelton v. Goodan,* 148 Kan. 870, 84 P. 2d 850.) Niebauer's failure to list the note for taxation was and still may be a matter for the attention of the assessor (G. S. 1935, 79-1427), but was altogether without significance as a defense to this action in replevin, or as it was enlarged at the instance of defendants themselves to include a determination of their liability as sureties on the redelivery bond.

Touching the point whether Niebauer was entitled to the possession of the property covered by his chattel mortgage at the time he filed this replevin suit, his chattel mortgage expressly gave him that right if at any time he deemed himself insecure; and it was for himself and nobody else to make up his mind on that subject. Such were the literal terms of the mortgage—terms which have never been invalidated in the long history of this court.

And while it is true that Niebauer knew of and acquiesced in the delivery of the mortgaged chattels to Bivins, along with the possession of the Sibon's farm, it was upon the understanding fairly expressed in the lease and clearly implied in the oral contract between plaintiff and Bivins, pleaded in Bivins' answer—and likewise in the bondsmen's answer—that the mortgaged property would be taken proper care of by Bivins. Furthermore, Bivins knew that Niebauer had the right to take possession of the property if he should deem himself insecure. And it cannot be gainsaid that Niebauer's security had been seriously impaired at the time the replevin action was begun. Three of the mortgaged horses were already dead and a number of the mortgaged cattle were missing. That much was certain, and the sheriff's return indisputably established it. So the timeliness and the propriety of the replevin were facts too clear for cavil.

A thorough and protracted study of the record and of the brief of appellees compels this court to hold that there was no defense to this action, nor anything to adjudicate except the amount of defendants' liability on their bond. In *Manufacturing Co. v. Porter*, 103 Kan. 84, 172 Pac. 1018, it was said:

"Where all the controlling facts to determine a liability are established, and the defense to the liability wholly fails, a new trial is unnecessary, and final judgment on the liability should be ordered." (Syl. ¶ 3.)

This familiar rule of appellate practice accords with the mandate of the civil code (G. S. 1935, 60-3317). (Vide *Mitchell v. Derby Oil Co.*, 117 Kan. 520, 531, 232 Pac. 224, and citations; *Gaston v. Collins*, 146 Kan. 449, 72 P. 2d 84; *Harmon v. Coonrod*, 148 Kan. 146, 79 P. 2d 831.) The practice of remanding appeals to be retried on limited issues or on a single issue is likewise sanctioned and encouraged by the civil code. (G. S. 1935, 60-3004, and citations under fourth clause; also, *Wyant v. Russell*, 141 Kan. 803, 44 P. 2d 260.)

Here, unfortunately for all parties, the record does not permit this court to end this litigation with directions to enter judgment. There will have to be a new trial. But the multifarious and irrelevant matters which confused the issues at the last trial should be eliminated entirely, and the controverted issues reduced to the ascertainment and determination of what property seized by the sheriff and redelivered to Bivins on the faith of the bond signed by Trindle and Near as sureties has not been delivered to Niebauer according to its terms. The fact that a neighbor took up some horses running at

large and offered them to the mortgagor, Mrs. Sibon, was not a return of the mortgaged horses to Niebauer according to the obligation of the bondsmen. Neither did the offer of the bondsmen to go to Stanton county and hunt up the cattle and bring them to Niebauer, if he would accept them, constitute a return of the cattle according to the obligation of their bond. The value of the unreturned horses and the unreturned cattle, as of the date of the replevin bond, should be fairly determined and judgment for their value rendered in plaintiff's behalf. That is the minimum of justice which must be accorded to plaintiff in this action; and the judgment of the district court must be reversed and the cause remanded with instructions to that effect. It is so ordered.