No. 37,045

JOHN H. GABEL, *Appellee*, v. JAMES E. HANBY and INTERSTATE TRANSIT LINES, *Appellants*.

(193 P. 2d 239)

Opinion filed May 8, 1948.

*O. B. Eidson,* of Topeka, argued the cause, and *T. M. Lillard, Philip H. Lewis, James W. Porter,* all of Topeka, and *N. E. Snyder,* of Kansas City, were with him on the briefs for the appellants.

*Lee E. Weeks,* of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder* and *Leonard O. Thomas,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for injuries sustained in a collision between the plaintiff's truck and a bus owned by the corporate defendant and driven by the defendant Hanby. Plaintiff recovered and the defendants have appealed.

The gist of the pleadings filed follows: Plaintiff alleged that U. S. Highway No. 40 extending easterly and westerly in Wyandotte County is a four-lane thoroughfare and that it is intersected by Nearman Road which runs north and south about two miles west of the city limits of Kansas City; that on August 9, 1945, at about 11:00 o'clock a. m. plaintiff was driving his Ford truck in an easterly

direction, and defendant Hanby was driving a bus of defendant Interstate Transit Lines in an easterly direction and in the rear of plaintiff's truck; that at the time plaintiff slowed his truck down to about twelve miles per hour and was in the act of turning to the left or north from the U. S. Highway into Nearman Road when the defendant Hanby driving the bus so negligently and carelessly operated it that he drove it into and against the plaintiff's truck, wrecking it and causing plaintiff to be severely injured; that the defendant Hanby was negligent in the operation of the bus in that he drove and operated the bus at a careless, reckless and unlawful speed of from sixty to seventy miles per hour; that he carelessly and negligently failed to keep a proper lookout and observe the movement of plaintiff's truck upon the highway and failed to have the bus under proper control so that he could stop or turn out in time to avoid striking plaintiff's truck. Allegations as to injuries received need not be set out.

The answer of the Interstate Transit Lines admitted that a collision occurred but denied it occurred by reason of any act, omission or want of due care by its driver but that the collision was proximately caused by the negligence and want of care on the part of plaintiff in that he suddenly and without warning turned his truck from the outside lane where he was proceeding to the left and drove the truck across the inside east-bound lane of the highway at a time when defendants' bus was passing or about to pass plaintiff's truck, thereby driving his truck into the right side of the bus; that the plaintiff made the sudden turn to the left when he heard, or by the exercise of reasonable care should have heard, the horn sounded by the driver of the bus and when he knew, or by the exercise of due care should have known, that the bus was approaching and was about to pass; that plaintiff failed to operate his truck with due regard for the safety of others using the highway in that he moved from one traffic lane to the other without first ascertaining that such movement could be safely made, and that he saw or by exercise of due care could have seen the bus closely approaching from the rear. Defendants' cross petition for damages to its bus need not be reviewed. The general tenor of the answer of defendant Hanby was to deny negligence and to charge the plaintiff with negligence in language similar to that used by his codefendant.

On the issues thus joined a trial was had as a result of which the jury returned a general verdict in favor of plaintiff and answered

special questions submitted. Defendants' several post-trial motions including a motion for a new trial were denied and the trial court rendered judgment on the verdict in favor of the plaintiff. The defendants duly perfected their appeal to this court, specifying error in particulars which will be considered as set forth in their brief. The parties will be referred to as the plaintiff and the defendants.

In the briefs many cases are cited in support of contentions made. These cases have all been examined, but all will not be mentioned as they are cumulative in character.

Defendants first contend that their demurrer to plaintiff's evidence should have been sustained, and under this heading they present two propositions, first that the evidence shows that plaintiff was guilty of negligence which was the legal cause of his injuries, and second that the evidence did not prove the defendants were guilty of negligence which was the legal cause of plaintiff's injuries. Of these in their order.

Defendants direct our attention to *Houdashelt v. State Highway Comm.*, 137 Kan. 485, 21 P. 2d 343, and *Crowe v. Moore*, 144 Kan. 794, 62 P. 2d 846, as upholding their right to demur because plaintiff's evidence disclosed his contributory negligence. Those cases do recognize the rule that while the burden of proving contributory negligence is on the defendant, where plaintiff's own evidence shows him guilty of negligence which precludes his recovery, the defendant may take advantage by demurrer. We note, however, that the instant demurrer, as set forth in the abstract, is only on the ground that the evidence does not tend to prove a cause of action against either defendant. It certainly did not directly challenge the trial court's attention to any claim the evidence disclosed plaintiff's contributory negligence. The abstract, without disclosing it, states there was extensive argument on the demurrer, and as we are not advised what that argument may have been, we shall consider the contention.

The principal contention by defendants is that plaintiff's testimony disclosed that nothwithstanding he had a clear vision with every opportunity to see the bus approaching, he never saw it and did not know with what object he collided. In a minor way, stress is laid on a claim that plaintiff's evidence showed he did not give a statutory signal of his intention to turn.

Before reviewing the evidence, we note the oft repeated rule that in testing the sufficiency of evidence, the court is to consider plain-

tiff's evidence as true, shall consider that favorable to him and disregard that which is unfavorable, shall not weigh contradictions, nor differences between direct and cross-examination, and if so considered there is any evidence which sustains the plaintiff's case the demurrer must be overruled. (See, *e. g., Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903, and cases noted in Shepard's Kansas Citations.) Under the above rule parts of the evidence may not be stressed, but the whole situation must be reviewed.

In order to discuss the contentions presently under consideration, as well as those later mentioned, we shall review the evidence generally. There is no dispute as to the topographical situation. U. S. Highway 40 runs east and west and is intersected by Nearman Road which runs north and south. The surrounding country is hilly and about 150 feet west of the intersection represent a low place on the U. S. Highway, which at all places concerned is wide enough for four lanes of traffic. From a point about 125 feet west of the west side of the intersection and extending west there is a dividing strip of land between the north and south strips of pavement, each strip of pavement being wide enough for two lanes of traffic. The north strip is devoted to west-bound traffic and the south strip to east-bound traffic. Eastward from the above point the pavement is not divided but consists of a broad strip forty feet wide, the lanes being marked by lines along it. About 150 feet west from the intersection there is an upward grade extending eight or nine hundred feet and further west the highway slopes downward. To the east from the above point the highway has an upward grade. There is dispute concerning the accident. Evidence favorable to the plaintiff disclosed the following: Plaintiff testified that on the day in question he left his home with his truck and reached the highway a mile and a quarter west of the intersection mentioned and drove in the right-hand or south lane to the east. His truck was in good order and he drove about twenty-five miles per hour. His truck had a window in the rear of the cab and it had a rearview mirror which extended out about twenty inches from where it was fastened on the left-hand door. The mirror was about six inches out past the bed of the truck. When plaintiff was about 500 feet west of the intersection he looked through the window, saw nothing behind him and moved over from the right-hand or south lane and over to the left-hand or north lane of the portion of the highway for east-bound traffic, and he was completely on

the left-hand side 100 feet west of where the dividing strip ended and never recrossed to the right-hand lane. When he got about 150 feet west of the intersection he looked in his rearview mirror and saw nothing. By this time he had slowed down to not over ten to fifteen miles per hour. He then shifted his truck into low gear and put out his hand to signal a left-hand turn. In answer to a question he stated he kept the signal out until within a second or two just before he started to turn. Appellants' contention as to this testimony is mentioned later. He was asked what then happened and stated, "That is the last I remember, starting across."

William Dragosh testified that on the morning in question he was driving east on the highway and saw plaintiff's truck ahead of him. When he was about 1,500 feet west of the intersection and going upgrade he saw the bus coming in his rearview mirror. The bus passed him at such a rate of speed that he could feel the impact of wind on his car; that he looked at his own speedometer and he was going forty-four miles per hour. He proceeded onward at the same speed and when he came over the hill west of the intersection he could see the right-hand side of plaintiff's truck and the bus ahead of him. The bus cut off the view of all of the truck. The truck and the bus were in the left-hand lane until the bus reached the end of the strip of land between the strips of pavement and then the bus started around the left-hand side of the truck and over into the west-bound traffic lane. When the bus was going around the truck he could see the taillights go on and then the collision occurred. Witness was not in a position where he could see any signal by plaintiff. He did not hear the bus driver sound his horn. He stated the accident occurred in the west-bound traffic lane; that the bus hit the back end of the truck, pulled the truck around and passed on by the truck.

Estella LaKemper testified she lived about one mile west of Nearman Road and that she was driving east on the highway at thirty-five miles per hour and the bus passed her so fast it rocked her car—in her judgment the bus was going sixty-five to seventy miles per hour. She continued to drive east and when she reached the top of the hill she saw the bus turn over. She did not see the collision.

Other evidence from various witnesses showed that the collision occurred in the intersection near the west side of the west line of Nearman Road extended and at a point about four feet north of

the center line of the forty-foot highway and in the lane for west-bound traffic. Plaintiff's evidence as to the extent of his injuries and damages need not be reviewed as no question concerning them is raised.

Defendants direct our attention to *Orr v. Hensy*, 158 Kan. 303, 147 P. 2d 749, where this court quoted approvingly from *McDonald v. Yoder*, 80 Kan. 25, 101 Pac. 468, to the effect that it is the duty of one driving an automobile upon a public highway to look ahead and see persons and horses in his line of vision and in case of an accident he will be conclusively presumed to have seen what he could and should have seen in the proper performance of his duty. The rule in the Orr case as well as in the McDonald case was stated in connection with the duty of a driver approaching an intersection to see ahead of him and to see objects approaching the intersection from the side. Neither case holds that in addition he must also look back of him, or that whatever he does is at his peril. But in any event we are of opinion that the matter may not be decided as one of law. All of the evidence bearing on the question must be considered. When about 500 feet from the scene of the accident plaintiff, then traveling in the south or right-hand lane, looked through his rear window, saw nothing coming up from the rear and angled over to the north or left-hand lane preparatory so as to be in position to make a left-hand turn. He slowed down his truck, changed gears, looked in his rearview mirror but did not see the bus, although it was behind him at some undetermined distance, gave a signal of his intention to turn left into Nearman Road and had started that turn when he was struck by the bus which was then in the lane for west-bound traffic. Plaintiff was acting in a properly lawful manner when he passed from the right to the left lane for east-bound traffic, slowed the speed of his truck, looked, even if he did not see the bus, gave his signal of intention to turn and then proceeded to turn. Even had he seen the bus, he still had the right to make the turn after he had performed his duty. This court has said on more than one occasion that the operator of a vehicle upon the highway may assume that others using the highway will observe the law, in this instance that the bus driver would take cognizance of his position, his slowing down and his giving signal of intention to turn, and that he is not guilty of contributory negligence as a matter of law in acting upon such assumption. See *Sullivan v. Johnston*, 164 Kan. 386, 190 P. 2d 417, and cases cited.

Defendants also contend that plaintiff was guilty of negligence in that he started to make his turn to the left into Nearman Road before he had passed the center of the intersection, and that he cut the corner. They say this was a violation of G. S. 1947 Supp. 8-544. We think not. Its provision is that an approach for a left-hand turn shall be made in the right-hand lane nearest the center line and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. This does not mean that in this case plaintiff had to stay on the south side of U. S. Highway 40 until he had passed east of the center line of Nearman Road projected north and south. The statutory definition of an intersection as being the area embraced within the prolongation of the lateral boundary lines of two highways which join at approximately right angles (G. S. 1947 Supp. 8-501) precludes the construction urged by the defendants. The statute merely required of plaintiff that when he entered the intersection for a left turn that he must leave the intersection on the right-hand of the highway he was entering.

Defendants' argument that plaintiff was guilty of negligence in that he did not give a signal of intention to turn continuously during not less than 100 feet traveled by the vehicle before turning (G. S. 1947 Supp. 8-544) is based upon their own interpretation of the evidence that the signal, if given, was only for a period of two seconds and for much less than 100 feet. Giving the evidence the construction required under the rule mentioned, the plaintiff did give the statutory signal. See also *Shattuck v. Pickwick Stages Corp.,* 135 Kan. 602, 11 P. 2d 996, where a situation as to speed and signals, somewhat analogous to that of the case at bar, was considered and a judgment in favor of the plaintiff was affirmed.

In a reply brief defendants direct our attention to our recent decision in *Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 190 P. 2d 850, which bears some similarity to the case at bar, although in many particulars it is clearly distinguishable. In that case may be found citations of our previous decisions holding that violations of statutes regulating traffic are not in and of themselves sufficient to make the driver of a vehicle guilty of negligence or contributory negligence, but for such violations to preclude recovery it must appear they were the proximate and legal cause of his injuries or contributed thereto. Under an interpretation of plaintiff's evidence

favorable to him, it cannot be said the evidence disclosed any violation of the traffic laws.

The trial court did not err in ruling on the demurrer insofar as plaintiff's contributory negligence is concerned.

Defendants also contend their demurrer should· have been sustained because plaintiff's evidence did not prove their negligence. They direct our attention to the grounds of negligence pleaded, and citing *Richards v. Chicago, R. I. & P. Rly. Co.,* 157 Kan. 378, 139 P. 2d 427, and *Clark v. Southwestern Greyhound Lines,* 148 Kan. 155, 79 P. 2d 906, argue that speed was not the legal cause of the accident, and in connection therewith cite *Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472, and *Crowe v. Moore,* 144 Kan. 794, 62 P. 2d 846, where it has been held the simple fact an accident occurs is not sufficient to predicate liability. Their argument is that the only evidence as to speed of the bus was when the bus was about 1,400 feet west of the intersection and not as to speed at the moment of collision. They also argue that the bus did not run into the truck, but that the truck turned into the bus and that the speed of the bus was not the proximate cause of the accident. The plaintiff, however, is entitled to have the evidence considered as showing that the bus ran into the truck. In the Clark case, *supra,* it was said that speed alone may not be sufficient to make the speeder liable, it must appear that the speed contributed to the accident and was the legal cause of the injuries sustained. We cannot agree that under the above cases plaintiff's evidence absolved the defendants of negligence. That evidence disclosed that the bus, driven at a high rate of speed, passed over the hill to the west and continued rapidly down the grade to the east and everything considered as to the position of the bus, the truck, the testimony of the witnesses Dragosh and LaKemper, and where the accident occurred, left room for an inference that the speed of the bus was such that the driver could not or did not slow down sufficiently and struck plaintiff's truck. Although the statute fixes prima facie speed limits (G. S. 1947 Supp. 8-532) it is provided under (c) the fact that the speed is lower than the limits fixed shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection. We think the question was a proper one for the jury to determine. But for another reason the ruling on the demurrer was correct. Plaintiff's evidence, if believed, warranted a conclusion that his truck was in the proper left-hand lane preliminary to make a left turn at the

intersection and that plaintiff had slowed down and had given a statutory signal of his intention to make the turn. Under such circumstances it may not be argued that the act of the bus driver in attempting to pass plaintiff's truck on the left and in the lane for west-bound traffic did not present a question for the jury as to whether the bus driver was guilty of negligence. The ruling on the demurrer was not erroneous.

Defendants next contend that the trial court erred in admitting the testimony of the witnesses Dragosh and LaKemper as to speed of the bus when it was about 1,500 feet west of the place of the collision; that it was calculated to and did bring the driver of the bus into ill repute with the jury. They argue that the collision was not caused by speed but by reason of the plaintiff turning his truck into the bus. That, however, is their version of the evidence. They correctly contend that in *Richards v. Chicago R. I. & P. Rly. Co.* and *Clark v. Southwestern Greyhound Lines,* supra, it was held that speed could not be considered as the proximate or legal cause of injuries. But the latter case recognized that speed alone may not have been sufficient; that it must have contributed to the collision and be the legal cause of the injuries. At the time the testimony was received the issue was the manner in which the collision occurred and whether the speed of the bus contributed to the collision and was the legal cause of plaintiff's injuries. It was vital to plaintiff's case that he show all matters tending to prove his right to recovery and we are of opinion the testimony was properly received in evidence.

Defendants contend the trial court erred in refusing to give a long requested instruction relative to speed. No purpose may be served by setting it out in full, nor the instructions the court did give. We have examined fully the requested instruction and insofar as it directed the jury to disregard any evidence as to speed of the bus, it was properly refused. In all other particulars the instructions given fully covered the requested instruction.

Under two headings defendants contend the trial court erred in denying their motion to set aside answers to certain special questions, and in denying their motion for judgment on the answers to special questions. The questions and answers were:

"1. How far north, in feet, of the center line of the four-lane highway is the point marked 'd' in Plaintiff's Exhibit No. 6? ('d' is a point marked as being the place of collision.) A. '4 feet.'

"2. Did the plaintiff reach a point in the highway opposite the center line

of Nearman Road before he started to turn to the left to enter said road? A. 'No.'

"3. Within what distance could the plaintiff have stopped his truck just before he started to turn to the left to enter Nearman Road? A. '8 feet.'

"4. Did the plaintiff give a signal of his intention to turn left into Nearman Road continuously during not less than the last 100 feet traveled by his truck before turning into Nearman Road? A. 'Yes.'

"5. When the plaintiff Gabel was closely approaching the point at which he made his turn to the left to enter Nearman Road and before the collision occurred, was there anything to obstruct his vision to the west along the highway upon which the defendant's bus was approaching? A. 'No.'

"6. After he looked in his rear vision mirror, did plaintiff ever look back again to ascertain whether any vehicle was coming behind him from the west? A. 'No.'

"7. In which lane of the highway was defendant's bus being operated—(a) Just at the time the plaintiff started to make his turn to the left to enter Nearman Road? (b) At the top of the hill to the west of the point of collision? (c) Halfway down said hill? (d) At the east end of the island? (e) At a point 56 feet west of the point of collision A. 'North lane of east bound traffic' (b) 'North lane of east bound traffic' (c) 'North lane of east bound traffic' (d) 'North lane of east bound traffic' (e) 'South lane of west traffic.'

"8. In which lane of the highway was plaintiff's truck being operated—(a) Just at the time the plaintiff started to make his turn to the left to enter Nearman Road? (b) At the time he passed the east end of the island? A. (a) 'North lane of east bound traffic' (b) 'North lane of east bound traffic'

"9. Was the defendant's bus in the process of passing the plaintiff's truck when the plaintiff made his turn to the left with the intention of entering Nearman Road immediately before the collision in question occurred? A. 'Yes.'

"10. Did the driver of the defendant's bus sound his horn just before the bus started to pass the plaintiff's truck? A. 'Yes.'

"11. At what rate of speed was defendant's bus traveling—(a) When at the top of the hill west of the point of collision? (b) When halfway down said hill? (c) When passing the end of the island? (d) At the time of the collision? A. (a) '40.' (b) '48.' (c) '55.' (d) '42.'

"12. Do you find and believe from the evidence that the driver of defendant's bus, James E. Hanby, was guilty of any act or acts of negligence which caused the collision in question? A. 'Yes.'

"13. If you answer the last question yes, then state the act or acts of negligence which you so find. A. 'Speed greater than is reasonable and prudent under conditions of the highway and the defendant failed to keep his proper lookout and observe the plaintiff's truck and attempting to pass in the wrong lane.'"

The defendants contend that the answers to questions Nos. 4, 7 (e), 8 (a), 8 (b), 12 and 13 were contrary to and unsupported by the evidence and that the answer to No. 13 was not responsive to the issues raised by the pleading:

Defendants' argument that the answer to question 4 is unsupported by and contrary to the evidence has been answered in part in our discussion of the demurrer to the evidence. Plaintiff had testified that when he was 150 feet west of the intersection he looked in his rearview mirror and seeing nothing put out his hand for a left-hand turn (indicating). He was then asked if he kept the signal out until just before he started to turn into Nearman Road and answered, "I would say to within a second or two, yes." He was then asked if he kept his hand out during the last 150 feet, and answered, "When I started into that last 150 feet I put my hand out for maybe a couple of seconds and then pulled it in and started to make the turn across there." Defendants stress the last answer and calculating from the speed plaintiff testified he was going, argue that his hand being held out for only two seconds could not have been held out except for a very short distance, far less than the statutory 100 feet. The argument is interesting, but the jury had the right to determine the fact from all and not part of the evidence. Without further discussion we think the evidence supported the jury's answer.

Defendants make no argument concerning the answer to question No. 7 (e) but we may say there was evidence to support it. While they do comment on the answers to No. 8 (a) and 8 (b) they state they are not of controlling importance and that the motion to strike was made to prevent a contention they admitted them to be correct. Our examination of the record shows that while there was disputing testimony, there was testimony which supports the answers made. Defendants argue together the answers to questions Nos. 12 and 13. They refer to their arguments previously made as to speed and which have been discussed, and contend that the finding as to speed must fall as ineffective. We do not agree for reasons heretofore stated. They contend there was no evidence to sustain a finding that the driver failed to keep a lookout and observe the plaintiff's truck. It is true that no witness testified so directly. But we do not agree that the only inference to be drawn from the evidence of the witness Dragosh, who saw the whole of the accident, and from the evidence of defendants as to sounding of the horn on the bus, was that the bus driver was without negligence in the particular stated. Under our decision in *Orr v. Hensy,* supra, and the cases cited, and under sections of our motor vehicle law set out in full in the court's instruction, it was incumbent upon the bus driver to take

note of plaintiff's truck traveling in the lane ahead of him, and under G. S. 1947 Supp. 8-540 (b) (2) he was under a statutory duty not to overtake and pass the truck on the left when approaching within 100 feet of or traversing an intersection. Defendants quote from *Niebauer v. Bivins*, 149 Kan. 260, 268, 87 P. 2d 619, to the effect that while a jury is not bound to believe the only testimony on a particular matter, their disbelief gives no excuse for a baseless finding of fact to the contrary. The principle stated is sound, but its applicability is not, in view of the evidence in this case. Defendants' contention that the motion should have been sustained as to that part of the answer that the bus driver was attempting to pass in the wrong lane, as that ground of negligence was not alleged in the petition, is correct if that portion be isolated from the remainder of the answer. If considered as explanatory of other parts of the answer, allowing it to stand would not be erroneous. The matter needs no extended discussion nor any conclusion, for even though that portion be stricken, the remainder of the answer constitutes a finding of negligence which was alleged. Under the circumstances we need not discuss defendants' contention that the bus driver had a right to pass on the left (G. S. 1947 Supp. 8-538) and that as there were no cars coming from the east he could travel on either side of the highway, citing *Gardner v. Leighton*, 144 Kan. 335, 58 P. 2d 1111. We may only observe that since the above case was decided in 1936, the legislature enacted the motor vehicle act and the right to drive on all portions of the highway is restricted (G. S. 1947 Supp. 8-537). And as noted above, section 8-540 (b) (2) of the act prohibits passing on the left side when approaching within 100 feet of or traversing an intersection.

Did the trial court err in denying defendants' motion for judgment on the answers to special questions? Preliminary to discussion, we note our previous holdings that a general verdict imports a finding upon all issues not inconsistent with the special findings; that the special findings are to be given such a construction, if possible, as will bring them into harmony with the general verdict, and if the special findings cannot be reconciled with the general verdict and are sufficiently full and complete in themselves, then judgment must follow such findings. (*Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 96 P. 2d 877, and cases cited.)

In considering such answers, the court is not permitted to isolate one answer and ignore others—all are to be considered together and

if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. (*Dick's Transfer Co. v. Miller,* 154 Kan. 574, 119 P. 2d 454.)

Defendants' motion was based solely on the answers to questions 1, 2, 3, 5, 6, 7 (a), (b), (c) and (d), 9 and 10, and other answers were ignored. A summary of the contention is that plaintiff did not pass the middle line of Nearman Road before he turned left and north (answer 2); that when he started to turn he could have stopped his truck within eight feet (answer 3); that nothing obstructed his view to the rear as he approached the intersection (answer 5); that after he first looked in his rearview mirror he did not look again (answer 6); that the bus was in the north lane for east-bound traffic when plaintiff started to turn and previous thereto (answer 7); that the bus was "in the process of passing" plaintiff's truck when plaintiff turned to the left (answer 9); and that the bus driver sounded his horn just before the bus started to pass the truck (answer 10). Defendants argue that the above answers compel a conclusion that the plaintiff was guilty of gross carelessness and contributory negligence and acquit the defendants of negligence which was the proximate cause of the plaintiff's injuries. To limit consideration to the answers thus relied on ignores the findings that plaintiff, while traveling in the north lane for east-bound traffic (answer 8), gave a proper signal of his intention to turn into Nearman Road (answer 4) at a time when defendants' bus was traveling fifty-five miles per hour (answer 11 [c]) when it passed over into the south lane for west-bound traffic (answer 7 [e]) and proceeded until it struck plaintiff's truck while traveling at forty-two miles per hour (answer 11 [a]). Defendants further argue that the answers disclose that the plaintiff's conduct fell below the standard to which he should have conformed for his own protection, but that he proceeded without regard for his own safety (*Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851)—in other words that he received his injuries by reason of his own negligence. We have previously considered the contentions that the plaintiff's turning to the left before crossing the middle line of Nearman Road and that his failure to see the bus in his rearview mirror did not make him guilty of negligence as a matter of law. We have previously dwelt on the evidence, now in view of the answers to be treated as facts, that plaintiff had placed his truck at a proper place on the highway to make a turn to the left into an intersecting road, and that he had given proper signal

of his intention to make the turn, as well as on the law applicable that plaintiff had a right to assume the bus driver would keep a lookout ahead for traffic and would not attempt to pass plaintiff at an intersection. All of the answers disclose such a requisite state of facts, and they do not disclose facts from which a contrary conclusion must be drawn. There is no inconsistency between the answers themselves, nor between the answers and the general verdict. All can be reconciled. The trial court did not err in ruling on the motion for judgment on the answers to special questions.

Defendants' argument under its contention that the trial court erred in denying their motion for a new trial, presents no matter that has not been heretofore discussed. There was no error in the denial.

The judgment of the trial court is affirmed.