THE SHERMAN CENTER TOWN COMPANY v. THOMAS P. LEONARD.

1. CONTRACT *to Move Hotel — Breach — Measure of Damages.* Where a party contracted with the owner to move his hotel from the town of I. to the town of S., and refused to carry out the contract, the prospective profit which the owner would have possibly gained if the building had been removed is not the measure of damages; but, upon the refusal of the contractor, it was the duty of the owner to have the hotel removed at once; and, where the contractor had been paid for the removal, the owner would ordinarily recover as damages for the breach, only the necessary expenses of removing the building, and of avoiding the consequences of the other's wrong.

2. ———— *Diminishing Damages — Rule.* Where a party seeks redress for the wrong of another, the law requires that he shall do whatever he reasonably can, and improve all reasonable opportunities to avoid the consequences and to lessen the injury.

3. ———— *Damages in the Lump.* Damages cannot be established by the statement of a witness giving in the lump the damages which he thinks the plaintiff has sustained. (*Town Co. v. Morris,* 39 Kas. 377.)

*Error from Sherman District Court.*

THE opinion states the nature of the action and the material facts. Judgment for plaintiff, *Leonard,* on May 21, 1888, for $600 damages. The defendant *Company* brings the case here.

*Hardy & Sterling,* for plaintiff in error.

*Bagley & Andrews,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Thomas P. Leonard recovered a judgment for $600 against the Sherman Center Town Company, as damage for the breach of a contract. Leonard owned a hotel in Itasca, and Sherman Center, which was three miles away, was a candidate for county seat of Sherman county. The town company, desiring to increase the population and influence of Sherman Center and strengthen its candidacy, held out inducements to the citizens of the surrounding towns to remove their buildings and establish themselves in business in Sherman Center, and unite in an effort to make that town the county seat of the county. Accordingly, they entered into an agreement with Leonard, by which Leonard was to join them in building up the town, and remove his hotel from Itasca, in consideration of which the company was to convey to him certain lots in Sherman Center, and provide at its own expense men and machinery to remove the hotel and place it over a cellar of equal size and on a foundation of a similar kind as it was then resting upon in Itasca. The plaintiff alleged that the company had failed and refused to remove the hotel in accordance with the terms of the contract; that

the other buildings which were then situated in Itasca have been removed to Sherman Center, and the town of Itasca has become depopulated, and the business of hotel-keeping of no value, and that the hotel now stands alone, with no town nearer to it than Sherman Center, which is nearly three miles distant. He further alleged that it was a large and well-furnished hotel, and that the cost of its construction and the furniture contained therein was about $4,500. It is alleged that the cost of removal would be about the sum of $800, and that he suffered damages by the refusal of the company to comply with the contract in the sum of $1,200. He therefore asked judgment for $2,000. The company, by its answer, denies the execution of the contract, or that it is authorized by its charter to enter into the contract alleged to have been made.

There are several errors assigned by the company, but only one of them requires attention. It appears that the company has conveyed the lots to Leonard, as stipulated in the contract, but the hotel has not been removed, and, according to plaintiff's testimony, the non-removal is owing to the refusal of the company to furnish the men and machinery for that purpose, although frequent demands have been made upon them. In the course of the trial the plaintiff testified that, by reason of the removal of the people and their buildings from other towns, Sherman Center became a flourishing place of several hundred people, where he could have profitably carried on the hotel business, but that the town of Itasca was practically abandoned; so that he is without business, and simply remains at the hotel to protect the goods and furniture therein. In order to prove the extent of his injury, the following question was asked, and allowed by the court over the objection of the defendant: " State, as near as you can, what would have been your profits — or what your damages were, in other words — by reason of the non-fulfillment of this contract, not moving your hotel and establishing your business at Sherman Center." Another question, which was allowed over objection, was: "State what the damage was by reason of them not moving your hotel to Sherman Center, as they

agreed to, in money." He answered that the loss or profits would have been $150 a month, and that the total damage sustained by reason of not having the hotel located at Sherman Center, besides the cost of moving the building, was from $1,200 to $1,500, and that it would cost about $800 to move the building.

The questions asked were objectionable, and the testimony given was inadmissible upon two grounds: First, the questions were objectionable because they did not call for specific facts, but permitted the witness to state a mere opinion, giving in the lump the amount of damages thought to be sustained. It is the function of the court or jury trying the case to determine from evidence properly presented what the amount of damages sustained is, and while it might be very convenient for the plaintiff to permit him and his witnesses to give the damages suffered in a lump, it would be a very unsafe practice to allow them to state the amount of damages supposed to be sustained, without regard to the facts or knowledge upon which their opinions were based. It is well settled that the practice is not permissible. (*Roberts v. Comm'rs of Brown Co.,* 21 Kas. 248; *Railroad Co. v. Kuhn,* 38 id. 675; *Town Co. v. Morris,* 39 id. 377; *C. K. & N. Rly. Co. v. Neiman,* 45 id. 533.)

Then, again, the prospective profits that he lost by the breach of the contract are too remote, uncertain and speculative to be recoverable. Who can tell what the future gains of the hotel business would have been in Sherman Center, if he had moved there? His past profits in Itasca were not shown, and there is no testimony of the gains of others established in the same business at Sherman Center. How, then, does Leonard know that the profits would have been $150 per month? The gains to be derived from the business depended upon many contingencies other than the mere removal of his hotel to that place. The growth of the town; the location of the county seat there, or at another town near by; the immigration and travel; the competition in the hotel business; the price of provisions and the cost of help; the general reputation of the house and the popularity of the landlord

with the traveling public and the people of that community, are suggested as some of the considerations that would affect the anticipated benefits. Where the breach of a contract results in the loss of definite profits which are ascertainable, and were within the contemplation of the contracting parties, they may generally be recovered; but the prospective profits do not furnish the correct measure of damages in the present case. Aside from the remote, conjectural and speculative character of the anticipated benefits, it cannot be said that the loss of them is the direct and unavoidable consequence of the breach. The plaintiff could not sit idle an indefinite length of time and safely count on the recovery of $150 per month as damages. If there was a breach of the contract, it was his duty, upon learning of it, to at once remove the building, or employ others to do so, and charge the cost of the removal to the town company. The law requires that the injured party shall do whatever he reasonably can, and improve all reasonable opportunities to lessen the injury. From the testimony, it appears that Leonard could have procured others to move the hotel; and in such a case the ordinary measure of damages is the cost of removal and the reasonable expenses of avoiding the consequence of the defendant's wrong. (*Railway Co. v. Mihlman,* 17 Kas. 224; *Loker v. Damon,* 17 Pick. 284; 1 Sedg. Dam. 165, and cases cited.)

Counsel for plaintiff in error say that no more than the cost of removal was allowed by the court; but the admission of the objectionable evidence against the opposition of the plaintiff in error would indicate that the court adopted an incorrect measure of damages, and did not limit the recovery to the expense of the removal. The liability of the plaintiff in error for any loss is not conceded. It is shown in the testimony that soon after the time for the removal of the building the people of Sherman Center abandoned the attempt to obtain the county seat, and all or nearly all of them moved to another place. It is claimed by plaintiff in error that Leonard objected to the removal of his building until the question of the location of the county seat was settled. He testified at

the trial that he did not intend to move the building to Sherman Center, and that he would not move the building at all until the county seat was permanently located. If the non-removal of the building was due to the fault of Leonard, he is not entitled to recover anything. This is a disputed question of fact which must be settled on another trial.

For the error of the court in admitting testimony, the judgment of the court below will be reversed, and the cause remanded for new a trial.

All the Justices. concurring.