No. 37,016

LaLane Ellen Langston, Executrix of the Estate of Alice M. Ransom, *Appellee*, v. T. C. Butler, *Appellant*.

(199 P. 2d 190)

Opinion filed November 13, 1948.

*William H. Towers,* of Kansas City, argued the cause, and was on the brief for the appellant.

*John L. Ibson,* of Fort Scott, was on the brief for the appellee.

The opinion of the court was delivered by

Hoch, J.: In an equitable action to cancel a deed on the grounds of misrepresentation, fraud, and lack of consideration, the plaintiff prevailed and the defendant appeals. Appellant's principal contentions are:

(1) In its findings of fact and conclusions of law, the trial court went outside of the issues joined by the pleadings and on its own motion introduced the issue of a confidential relationship between the grantor and the grantee, and the lack of independent advice to the grantor; and

(2) There was no evidence to support a cause of action upon the theory advanced in the petition.

Alice M. Ransom, a widow, owned certain described real estate in Fort Scott, Kan. On February 12, 1946, she executed a deed to this property to T. C. Butler, the appellant here. Recital in the instrument was that the deed was executed in consideration of "One Dollar and other Valuable considerations" and that "As a part of the consideration hereof the party of the second part agrees that the first party and Tom Bruce are to have a home in the house on said premises during their natural lives, and that the second party will pay the expenses of a decent funeral for the said first party upon her decease, said Tom Bruce is to have the *priveledge* of cul-

tivating One Half of the ground on the said premises which is now in cultivation."

On November 2, 1946, Mrs. Ransom brought action to cancel the deed alleging that Butler, the grantee, "knowingly, wilfully, and wrongfully, with the purpose and intent to defraud this plaintiff" prepared the deed and "through misrepresentation and fraud" induced this plaintiff to sign such deed in that he represented to this plaintiff that it was a paper or a document which she would have to sign in order to continue to receive assistance payments from the welfare office in Bourbon county and that this plaintiff, relying upon said statements and acting under such inducement, did sign her name to some paper or document, believing that it was a paper relating to her right to receive assistance from the welfare board and without any knowledge that it was a warranty deed conveying said above described real estate to the defendant; that there was no consideration for said conveyance, nor did she at any time agree or intend to convey her property to the said T. C. Butler; that said property was of a reasonable value of $2,000 on February 12, 1946, and she was receiving assistance from the welfare department which enabled her to live in her home on the real estate as described above; that she was under no obligation to make a conveyance to the said T. C. Butler but had intended that said property should be used to pay her medical expenses and funeral expenses and that the balance of the property, if any, should go to LaLane Ellen Langston.

Mrs. Ransom died on January 13, 1947, and the action was revived in the name of the appellee, LaLane Ellen Langston, executrix of her estate, and her sole beneficiary.

In his answer the defendant admitted the execution, delivery, and recording of the deed, and denied the other allegations of the petition. The case was tried before the court, and on May 2, 1947, judgment was entered cancelling the deed and granting the defendant Butler a lien against the estate in the sum of $401.30 for money paid by him for taxes, and ordering each party to pay the fees of his own witnesses and dividing the remainder of the costs equally between the parties.

It may be noted at the outset that opposing counsel do not agree upon the construction to be given the record before us. This is readily understandable in view of its confusing nature. After entering judgment and while a motion for rehearing was pending, the trial court made findings of fact and conclusions of law which were

served upon the parties on May 19, 1947. No journal entry was filed at that time. In these original findings, the court specifically found that the execution of the deed was secured by fraud and mis-representation; that the property had a reasonable value of $2,000; and that the consideration was so wholly inadequate as to constitute proof of fraud and undue influence. In its findings of fact number two the court held:

"At the time the above deed was executed the grantor, Alice M. Ransom, was a woman of about seventy years of age suffering from cancer and accord-ing to the evidence was a very sick woman on the day the deed was executed. The grantor was in bed and apparently in no condition to weigh the matter of signing the deed. Even if she had understood the nature of the paper which she was signing, yet the evidence shows that she was under the domi-nation and influence of the defendant who had been her pastor for several years. Further, the evidence shows that defendant misrepresented the nature of the instrument to Mrs. Ransom by telling her that it was a paper relating to payments and increased allowance from the Welfare Board from whom she was then receiving a small allowance."

The defendant filed motion for judgment on the findings, asking that findings of fact and conclusions of law be specifically stated and numbered; to strike certain findings, and to make additional findings of fact and to adopt suggested conclusions of law. These motions need not be noted in detail. Thereafter the trial court made "amended findings of fact" and conclusions of law which bear date of May 21, 1947, but which were not filed of record or served upon counsel until May 28, 1947. Again no journal entry was filed at that time. No additional evidence was taken following the filing of the original findings of fact and conclusions of law. In the "amended findings of fact" the trial court found, *inter alia*, that Mrs. Ransom became quite ill in the latter part of 1945; that by February, 1946, "her life was despaired of," and that she executed the deed on February 12, 1946; that she was very ill on that day having had medical attention in the forenoon and that "a deed was prepared and given to her for signature, which for some reason she declined to sign. A short time later the deed in question was pre-pared and brought to her by Butler and Herman F. Wogan, white, a notary public. She signed this deed in the presence of the notary. He acknowledged the same and Butler placed it in his pocket. Such controversy exists in the evidence that the court is unable to deter-mine just who was present and just what the transaction was on the signing of the deed, but the defendant, Butler, was present, the deed

was prepared at his instigation and signed in his presence." That Mrs. Ransom died on January 13, 1947, and that at the time of the trial in May, 1947, the expenses of her last sickness and funeral remained unpaid, and that the defendant Butler had not paid or offered to pay them. As "conclusions of law" the trial court found that a confidential relationship existed between Mrs. Ransom and the defendant Butler; that she had no independent advice in the transaction; and that she did not comprehend the nature of the transaction at the time the deed was executed.

It will be noted that in the second and amended findings of fact the trial court did not specifically find that there was fraud and misrepresentation. A second journal entry was prepared which embodied the second group of findings and on the same day, June 24, 1947, the two journal entries were filed—one embodying the original findings and the other embodying the amended findings. On this state of the record, appellant contends that the amended findings were intended wholly to supersede the original findings. Appellee contends on the other hand that the second findings were not intended to vacate the first findings, but were intended to be supplementary thereto, and he calls attention to the fact that in the amended findings the former ones were not specifically set aside and also that both journal entries were filed on the same day.

On this state of the record, we think the two sets of findings should be harmonized, if possible. And we conclude that they are not necessarily repugnant, even as to the matter of fraud and misrepresentation, and that they are otherwise clearly consistent with each other.

We first consider defendant's demurrer to the plaintiff's evidence. Was there any substantial evidence to support the judgment? It is elementary that in testing evidence as against a demurrer, we do not weigh conflicting evidence; that only that evidence favorable to the party adducing it is considered, and that all reasonable inferences favorable to him must be indulged in his favor. (*Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 477, 163 P. 2d 389; *Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538.)

Frankly stated, we find much of the evidence difficult to understand. It is evident from the record that the trial court had the same difficulty with reference to much of it. In its findings the trial court said with reference to a number of matters that it was unable to ascertain the facts from the evidence. However, after careful

examination of the record, we are unable to say that there was no substantial evidence to support the trial court's findings that Mrs. Ransom was ill and unable to comprehend the nature of the transaction and that the grantee secured her signature to the instrument by fraudulent misrepresentations. It is not so clear that there was *no* consideration for the deed, but ample evidence that the consideration was wholly inadequate. Witness Bruce testified that when Butler came to the house with a paper for Mrs. Ransom to sign, there were words between them after which Butler left and that subsequently he returned with Wogan, a notary public, who read the paper to Mrs. Ransom; that he (Bruce) asked to see it and inquired whether they called that a deed, after which Butler went away and changed the instrument again and returned the second time; that Bruce again asked to see the deed and then made an objection to it "stating that the deed didn't specify anything," after which Butler went away again; that he didn't know what Mrs. Ransom's objection was and didn't think she was in her right mind when she signed; that "her nerves were shot to pieces and that interfered with her mental"; that a doctor came to treat Mrs. Ransom on the day the deed was signed.

LaLane Ellen Langston, the appellee, testified that she became acquainted with Mrs. Ransom in April, 1940; that she was at the Ransom home when the deed was signed; that Butler came in and went to the bedroom where Mrs. Ransom was lying, and she heard him say that he had been to the welfare department "to get Mrs. Ransom more money" and that when Butler returned with Wogan, a notary public, he said, "I have been to the Welfare Board and you have to sign these papers to get more money"; he also said "This is final, I brought the law with me"; that after saying she was "so sick," Mrs. Ransom signed the paper; that Wogan did not read the paper to Mrs. Ransom and never spoke to the deceased.

Mrs. Lizzie Jordan testified that she had known Mrs. Ransom for more than fifteen years and was at her home on the day the deed was signed; that Mrs. Ransom said "I will sign the paper, but I don't feel like it"; and that Butler said, "The reason I want you to sign these papers, they are urgent. I am trying to get you more money. You need it"; that Mrs. Ransom was "in a bad fix" on the day she signed the deed; that she was nervous, "her head was going, and she wasn't just right that day at all."

Witness William Jordan testified that Butler had been pastor of

the "Little Street Church" which Mrs. Ransom attended and that "she told me that she was always been taught to obey her pastor and to do what he say to do." Defendant's motion that the latter answer be stricken was overruled.

Herman Wogan, the notary public, a witness called by the defendant, testified on cross-examination that when he came to Mrs. Ransom's bedside with the deed "she rose up and signed the deed"; that he did not at any time read the deed to her and simply looked to see that she signed her name in the same way that it appeared in the instrument; that all he did was to take the acknowledgment of her signature.

Considerable testimony was offered by the defendant in contradiction of plaintiff's evidence, but there would be no point in repeating it here in view of the issue presented. There was considerable testimony with reference to certain transactions involving the sale of hogs owned by Mrs. Ransom or Mr. Butler or both, but we are unable to see that it is very material or relevant to the instant issue.

Witness Emily Kells, a case worker connected with the local welfare office, testified that she first met Mrs. Ransom when she was placed upon the welfare rolls in April, 1942; that on the 17th or 18th of February, 1946, she went to the Ransom home; that when she arrived Mrs. Ransom was confined to her bed and was in great agony; that she called Mr. Butler and when he came to the door of the bedroom she asked him if he had had Mrs. Ransom sign some papers recently; Butler stated that he had; when asked what those papers were, he stated to her that it was nobody's business, but she stated she thought it was their business because he had misrepresented the situation to Mrs. Ransom; that according to Mrs. Ransom's statement, he told her that he had a conversation with the welfare department and they told him it was all right for her to sign the papers, and he denied that he had told Mrs. Ransom he had had any conversation with the witness about the papers, whereupon Mrs. Ransom "raised up" and said "Yes, you did." That as Butler was leaving she told him that if the papers were a deed to Mrs. Ransom's home, the welfare department might find that she had signed away a resource which might cause them to discontinue her assistance, and asked him whether in that case he was willing to take care of Mrs. Ransom, and that Butler did not answer.

It is true as contended by appellant that plaintiff did not allege

in her petition that she relied upon the defendant's representations because of a confidential relationship existing by virtue of his having been her pastor. However, even if we disregard entirely the findings as to confidential relationship and undue influence, other findings, sufficient to uphold the judgment, were supported by substantial evidence.

No grounds have been shown to warrant upsetting the judgment, and it is affirmed.