No. 37,999

OWEN BRUCE McCRACKEN, *Appellee,* v. E. C. STEWART and O. H. STEWART, a partnership, doing business as GLOBE CONSTRUCTION COMPANY, *Appellants.*

(223 P. 2d 963)

Opinion filed November 10, 1950.

*Arnold C. Todd,* of Wichita, argued the cause, and *D. Emmett Foley,* also of Wichita, was with him on the briefs for the appellants.

*Patrick J. Warnick,* of Wichita, argued the cause, and *Alan B. Phares* and *Clyde M. Simon,* also of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by appellee to recover damages for personal injuries suffered when the truck he was driving went into the excavated portion of a street being repaired by defendand construction company, alleged to have been caused by defendants' negligence in failing to have proper barriers or warning lights. Defendants appeal from a jury verdict for plaintiff.

Plaintiff's evidence in support of allegations contained in his petition is as follows: Plaintiff, a man thirty-seven years of age, was engaged in a partnership business with his wife in the sale of janitor's supplies. He traveled as a salesman over the west three-fourths of Kansas, operating the supply business from a half-ton pickup truck in which he kept his supplies. The truck was owned by his wife. The partnership had been in existence since February, 1947.

That on and prior to September 22, 1947, defendants—a partnership doing business as Globe Construction Company—were engaged under proper authority with the city of Wichita, Kan., in preparation of Garland streets for paving between Eighteenth and Twentieth streets, that portion being known as the 1900 and 2000 blocks. Defendants had commenced to excavate the west half of Garland street between Eighteenth and Nineteenth streets known as the 1900 block, the excavated portion commencing at Eighteenth street and extending north towards Nineteenth street and ending 200 feet south of Nineteenth street.

At about midnight on September 22, 1947, plaintiff was proceeding south on Garland street and when he reached the intersection of Nineteenth street, he observed an unlighted barrier extending across the west half of Garland street, thereby leaving the east half of Garland street open to traffic. He observed a car coming towards him from the south on the east side of the street. He shifted his truck to second gear, retarded its speed to twenty miles, turned his truck to the left and east side of Garland street and around the unlighted barrier so that the car approaching from the south could pass him and proceed on north. Plaintiff's truck proceeded on south in second gear about 100 feet at which time he observed an unlighted and unbarricaded excavation on the west side of Garland street, fifteen feet ahead of him. He attempted to turn his truck sharply to the left towards the east side of Garland street but the right front wheel of his truck engaged a portion of the excavated part of the street

causing him to lose control of the truck and it turned over on its top in the excavated portion of the street, injuring plaintiff. The night was clear but dark. There were no lights anywhere in the area and no signs or warnings either at the north end or east side of the excavated portion of the street, the east half of the street having been left open for traffic and so used. Evidence disclosed that the distance between the barricade at Nineteenth street and the excavated portion was from 100 to 200 feet. Two police officers were called to the scene immediately after the accident and they testified there were no burning lights of any kind and no barricades at the excavation; that they attempted to light the unlighted lanterns at the Eighteenth and Nineteenth street barricades, but they would not burn. They returned to the city yards, obtained lanterns and placed them at the barricades and at the excavated portion of the street as a warning to street travelers.

Testimony of plaintiff's doctor disclosed that plaintiff suffered a sacroiliac sprain; that he suffered from shock, an abrasion of the left elbow, arm and shoulder; that he had some torn muscles and abrasions to the right knee; injury to his hip, and a strained or torn muscle. The doctor prescribed light treatment and a sacroiliac belt; and further testified he had given him light treatments; that lifting objects aggravated his condition; and that, in his opinion, plaintiff would never fully recover. He suggested that plaintiff try light work and do no heavy work for at least a year; thought he was slowly improving; and stated his doctor bill to date including the sacroiliac belt was $200. Defendants' doctor examined plaintiff in October, 1947, and testified that there appeared to be considerable muscle spasm preventing movement of plaintiff's spine, and also considerable tenderness under pressure in the lower part of the back. X rays showed a strain in the dorsal portion of the spine, the lumbo portion of the spine, which was the result of muscle spasm; and that he had a permanent injury to his back requiring further treatment.

As to plaintiff's loss of earnings during his disability, plaintiff testified that by reason of a tornado damaging his home he lost all his records and papers pertaining to the income from his business as a salesman and partner in the janitor supply business including his income tax report, but that his best recollection was that his average daily income was approximately $25. No further evidence was tendered as to his daily profits.

The plaintiff rested his case and defendants interposed a demurrer

on the ground that the evidence failed to disclose facts sufficient to support the allegations contained in plaintiff's petition and for the further reason that the evidence shows plaintiff to be guilty of contributory negligence as a matter of law, which is the basis of defendants' first assignment of error.

We shall first consider whether the demurrer to the evidence should have been sustained. In so considering, we will not weigh evidence, and will give the evidence of the plaintiff a liberal construction, resolving all doubt against defendants. Where reasonable minds might reach a conclusion in favor of plaintiff, the demurrer should be overruled. (*Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538; *Langston v. Butler*, 165 Kan. 703, 199 P. 2d 190; *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 923; *Jones v. McCullough*, 148 Kan. 561, 83 P. 2d 669; *Smith v. Kansas City*, 158 Kan. 213, 146 P. 2d 660.) A review of the evidence discloses that defendants contracted to excavate and pave a public street. According to the nature of the task it was their duty to warn the public of the possible danger incident thereto. The construction was in a dark section of the city; inadequate warning signals were placed at the entrance of the area but none at or near the excavated part thereof. A motorist traveling upon the east side of the street left open for traffic would not have sufficient notice of the lurking danger.

Defendants further contend that since appellee saw the barrier at the intersection of Ninteenth and Garland streets, and slowed down and circumvented the barrier without any mishap, he should have been apprised of some sort of later danger because of the barrier at Nineteenth street, and that by continuing on with his truck in second gear and until the accident occurred, he was guilty of contributory negligence as a matter of law.

Plaintiff (appellee) does not contend that it was the failure of defendants to properly warn of the approach to the excavated area alone which led to the accident, but rather that act coupled with defendants' failure to erect warnings at the north and east edges of the excavation which contributed to the injury.

This court has repeatedly stated that in determining whether a plaintiff is guilty of contributory negligence, when tested by demurrer or on motion for a directed verdict, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon. See, also, *Smith v. Kansas City*, supra; *Jones v. McCullough*, supra; and *Hill v. Southern Kansas Stage Lines Co.*, supra.

Applying the foregoing rule, we hold the evidence established negligence on the part of appellants. The unlighted barrier at Nineteenth street covering the west half of Garland street may be considered as a warning, but the east half of the street being left open for travel and so used was certainly some invitation to the plaintiff to proceed with caution, which the evidence shows he did. He was not bound to anticipate pitfalls in the street that were hard to observe in the absence of lights or other warnings. In view of the evidence we cannot say as a matter of law that defendants were not guilty of negligence in failure to properly warn travelers by the use of barricades or lights, nor can we say that plaintiff was guilty of contributory negligence as a matter of law. The demurrer to plaintiff's evidence was properly overruled.

Defendant's evidence will not be summarized as it does not refute plaintiff's evidence but in many instances corroborates plaintiff's contentions. However, defendants called plaintiff's wife as a witness. She testified as to their marital relation and that she was engaged in business with plaintiff in selling janitor's supplies as a family business. She identified Exhibit A as her 1947 income tax return for both federal and state. The return reflected a gross income of $1,750 from selling brushes, and a total cost of goods sold plus operating expense in the sum of $1,926.77, indicating a loss in the business operation for the year 1947 of $176.77. Defendants offered the tax return in evidence but on objection by plaintiff, the court refused to admit it.

The case was submitted to the jury which, after deliberating, returned its general verdict as follows:

"We, the Jury, impaneled and sworn in the above entitled case, do upon our oath find the issues for the plaintiff, Owen Bruce McCracken and assess the amount of his recovery in the sum of $5550.00.

"Date of this verdict November 7, 1949.

"S/ Jos. B. Matz
Foreman"

At the same time the jury returned into court its answers to special interrogatories submitted by the court as follows:

"Q. 1. Did anything obstruct the plaintiff's vision between the time he drove around the barricade at the north end of the Nineteen Hundred Block on Garland Street and the time when he drove his car into the excavated part of Garland Street? A. No.

"Q. 3. Did the plaintiff correlate the speed of his car with the clear or unobstructed distance between the time he passed the barricade and the time when he drove his car into the excavated portion of the street? A. Yes.

"Q. At what rate of speed did the plaintiff drive his car between the barricade and the excavated portion of the street? A. Approximately 20 miles per hour.

"Q. 5. Did the plaintiff drive his automobile at a speed greater than was reasonable and prudent under the conditions then existing and particularly between the time he passed the barricade and the time he drove his car into the excavated part of the street? A. No.

"Q. 6. Did the plaintiff between the time he passed the barricade and the time he drove his car into the excavated part of the street drive his automobile in such a manner that he could have stopped it within the range of his vision? A. Yes.

"Q. 7. What was the distance between the barricade at the north end of the Nineteen Hundred Block on Garland Avenue and the north end of the excavated part of the west half of Garland Avenue? A. Approximately 200 feet.

"Q. 8. From the time the plaintiff passed the barricade until he drove his car into the excavated part of Garland Avenue, was he guilty of negligence which was a direct, proximate or contributing cause of the accident and injuries of which he complains? A. No.

"Q. 9. Were the defendants guilty of negligence that was a proximate or direct cause of the accident and injuries of which the plaintiff complains? A. Yes.

"Q. 10. If you answer the foregoing question in the affirmative state in detail the act or acts of negligence of which you find the defendants guilty? A. No warning lights, improper and inefficient barricades. No warning signs, at 18th and 19th Streets. Failure to maintain lights. No warning lights or barricades at the excavated area.

"Q. 11. If you find for the plaintiff then state how much you allow the plaintiff as damages for:

"a. Injuries and pain and suffering? A. $3,200.00.

"b. Loss of profits or remuneration from business? A. $2,000.00.

"c. Medical expenses? A. $350.00.

"S/ Jos. B. Matz, Foreman."

Defendants' motion for judgment on the answers of the jury to the special interrogatories notwithstanding the general verdict of the jury was overruled; to this ruling defendants (appellants) assign error.

Appellants admit that the answers to the first seven interrogatories are sustained by substantial evidence, and from a careful review of the evidence we find that answers to the remainder of the interrogatories are sustained by ample evidence with the exception of the answer to 11b, hereinafter discussed. Defendants contend, however, that the jury's answers to the first seven interrogatories convict plaintiff of contributory negligence and urge the same argument as was urged on their demurrer to the evidence at the close of plaintiff's

case. Inasmuch as we have previously disposed of that argument, we will not reiterate it here. The question of contributory negligence was for the jury. Defendants urge that the answer to interrogatory No. 8 was but a conclusion. It is an elementary rule of law that the jury's answers to special interrogatories are to be harmonized with each other and with the general verdict if possible. The jury's answers to special interrogatories Nos. 9 and 10 find defendants guilty of negligence which was the direct and proximate cause of plaintiff's injury and the general verdict in favor of plaintiff exonerated him of any contributory negligence. (*Fisher v. Central Surety & Ins. Corp.*, 149 Kan. 38, 86 P. 2d 583; and cases cited in Hatcher's Kansas Digest, Trial, sec. 295.) A close analysis of the answers to the special interrogatories indicates to us no inconsistency with each other or with the general verdict.

Did the trial court err in permitting the plaintiff to testify over the objection of the defendants, from memory, concerning his average daily income on and immediately prior to the date of the accident? The plaintiff in his petition sued for an amount of $2,075 as loss of income which was of the reasonable value of $25 per day. The plaintiff at the trial attempted to prove his daily income by stating that his best recollection was that his income approximated $25 a day in the business in which he was engaged on the date of the accident. Objection was made on the part of defendants to plaintiff's testifying from memory or recollection concerning his average daily income. The court made inquiry of the plaintiff as to whether or not he had kept a record and had the record available. Although the plaintiff was interrogated concerning his records he was not able to disclose what the records showed with respect to his average income. Upon a more detailed inquiry of the plaintiff, by counsel for the defendants, concerning his records, the plaintiff explained that about a year before the trial of this case a tornado blew the roof off plaintiff's house and that as the result thereof he lost a lot of valuable papers, particularly copies of his income tax reports, but nowhere did he explain that the records which he lost were a part of those which he kept concerning his income. Notwithstanding the objections of counsel for the defendants to the plaintiff's testimony, the court permitted the plaintiff to testify from his recollection that his average daily income on September 22, 1947, was approximately $25 a day. Plaintiff's testimony does not disclose the period of time prior to September 22, 1947, during which his income was $25 a day and there is

nothing in the record to indicate whether this was gross or net income or whether it was partnership or personal income.

The result of the foregoing testimony on the part of the plaintiff, uncorroborated by any other evidence, was that the jury awarded the plaintiff damages in the amount of $2,000 arising by loss of renumeration from business. This court has consistently held that damages cannot be established by statements of a witness based on mere opinion without regard to specific facts or knowledge upon which their opinions were based. Damages cannot be based on mere conjecture or speculation. See *Town Co. v. Leonard,* 46 Kan. 354, 26 Pac. 717. Before one may recover damages for loss of profits to an established general business, occasioned by the wrongful acts of another, it must be made to appear the business had been in successful operation for such period of time as to give it permanency and recognition, and that it was earning a profit which may reasonably be ascertained or approximated. See *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091. The prospective earning capacity that plaintiff lost as a result of this accident is too remote, speculative and uncertain as based on his mere opinion to be recoverable.

Next, did the trial court err in refusing to admit in evidence, when offered by the defendants, a copy of the federal income tax return of the wife of the plaintiff? The plaintiff testified that the pickup truck which he was driving on the occasion of the accident was owned by his wife; and that he and his wife owned the business together. Also the plaintiff testified that he and his wife started in this business in February, 1947, and the accident happened in September, 1947. The plaintiff, as previously shown, testified that about a year before the trial of this case he lost all copies of his income tax return as the result of a tornado blowing the roof off his house. Mrs. McCracken testified that she was the wife of the plaintiff in the case, owned the truck which the plaintiff was driving on September 22, 1947, and that she was engaged in the business, with her husband, in the selling of these supplies, and that Exhibit A, identified by her as a true copy of her 1947 income tax return, reflected the income from the business in which she and her husband were engaged at and prior to the plaintiff's accident; that she filed the original with the federal government and the state of Kansas. The court sustained the objection of counsel for the plaintiff to the introduction of this exhibit in evidence. It will be observed by examination of the exhibit that the business of selling brushes and janitor supplies in which the plaintiff and his wife were engaged in 1947 and from

which the plaintiff testified, over the objection of the defendants, that his average daily income was $25, not only lost $176.77, but that the partnership paid the plaintiff nothing except the sum of $5 a day for 175 days or a total sum of $875 for hotel, meals and ordinary traveling expenses. The jury of course lost the benefit of this documentary evidence and returned a verdict in favor of the plaintiff for loss of compensation by the plaintiff, after the accident, based upon his testimony concerning his average daily income on September 22, 1947.

It is true that plaintiff's wife was not a party to this litigation; however, in view of the lost records pertaining to the partnership business, the income tax return of the wife reflecting the profits and loss of said business is some evidence and relevant to the issues involved. Moreover, it was admissible as evidence going to the weight to be given plaintiff's testimony. We are of the opinion that under the facts in the instant case the trial court committed error in not admitting defendants' proffer of Exhibit A, the income tax return.

In view of what has been said, we approve the answers to the first ten special interrogatories and that part of special interrogatory No. 11 showing an allowance of $3,200 for injuries and pain and suffering and $350 medical expense, and the general verdict to that extent. We cannot approve the answer to special interrogatory No. 11b showing an allowance of $2,000 for loss of profit or remuneration from business.

It is unnecessary to retry all the issues in order to determine the issue of loss of profit from business. Those issues have once been determined in a trial before the court and jury and finally determined in favor of plaintiff. (G. S. 1935, 60-3004; *Carlgren v. Saindon,* 129 Kan. 475, 283 Pac. 620; *Van Pelt v. Richards Paint & Paper Co.,* 132 Kan. 581, 296 Pac. 737; *Niebauer v. Bivins,* 149 Kan. 260, 87 P. 2d 619.) We feel constrained to grant a new trial on the one issue of plaintiff's loss of profit or remuneration from his business by reason of the injury received.

The judgment of the court below is reversed in part with directions to set aside the answer to special interrogatory No. 11b and reduce the general verdict in that amount and to let the answers to the remaining special interrogatories stand, and on a new trial to submit the case on the sole issue as to the amount plaintiff is entitled to recover for loss of profit or remuneration from business by reason of the injuries sustained.

It is so ordered.