No. 39,494

Paul G. Ducoin and Willabeth E. Ducoin, *Appellants*, v. W. L. Morris, *Appellee*.

(277 P. 2d 587)

Opinion filed December 11, 1954.

*Harry Gillig, Jr.,* and *Roy H. Wasson,* both of Wichita, argued the cause, and *Henry D. Edwards,* of Wichita, was with them on the briefs for the appellants.

*W. D. Jochems,* of Wichita, argued the cause, and *J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, S. C. Durbin, J. Francis Hesse, James W. Sargent,* and *Stanley E. Wisdom,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: Plaintiffs, Paul G. Ducoin and Willabeth E. Ducoin,

his wife, filed an action to recover damages from W. L. Morris, their lessor, for breach of a lease contract.

Errors specified are orders sustaining defendant's demurrer to plaintiffs' evidence and overruling plaintiffs' motion for a new trial.

Paragraph two of the petition, in substance, alleged:

Defendant was constructing a number of buildings in a locality in the city of Wichita referred to as the Community Center; on January 11, 1950, he leased a unit in one of the buildings being constructed at 1321 West 18th street to plaintiffs for a bakery; the lease was entered into by plaintiffs in consideration of and by reason of the following clause:

"It is understood and agreed between the lessor and the lessee, that the premises hereby leased shall be used only as a salesroom and an outlet for the lessee's merchandise, to-wit: bakery products. The lessor agrees that he will not, during the term of this lease, carry on or conduct, or permit to be carried on or conducted, under any lease or letting, upon any portion of the premises owned by him, to-wit: Lots 84, 86, 88, 90, 92 & 94 & 96 on Garland Avenue in Motor Addition to the City of Wichita, Sedgwick County, Kansas, any business which shall involve the selling or handling, or manufacturing of merchandise of the same character as that sold or handled or manufactured by the lessee with the exception of bread."

Paragraph two ended as follows:

"That pursuant thereto the plaintiffs purchased bakery fixtures in the amount of $3,000.00 and a delivery truck in the amount of $1600.00 for the purpose of operating said business. That the plaintiffs did move said equipment into said premises and started the operation of said business."

Appellants amended the petition by changing the period at the end of paragraph two to a comma and by adding the following:

"which was operated at a profit until the breach of plaintiffs' lease by the defendant as hereinafter set out."

The petition further alleged:

". . . that notwithstanding the said written lease, this defendant in total intentional and malicious disrespect of the same and the rights of these plaintiffs, leased another salesroom unit of said community center on the real property in said lease described to Jack Moses for the purpose of operating a grocery store and the selling of bakery products. That said lease as the plaintiffs are informed did not contain a prohibition against the said Jack Moses selling bakery products as these plaintiffs are advised, informed and therefore allege. That the said Moses did proceed to operate said grocery store and sell bakery products in said community center in competition to these plaintiffs selling bakery products in the approximate amount of $25.00 per day. Plaintiffs allege that the community was such that an exclusive bakery shop could not survive operation with other stores selling bakery products in said community center. That the defendant knew the said Jack Moses was selling

bakery products in his said store in violation of the agreement between the defendant and these plaintiffs and that the defendant knew the same was being done at all times after the opening of said grocery store. That the defendant patronized said grocery and purchased bakery products therein at various times as these plaintiffs are informed and therefore allege. That by reason thereof the defendant permitted, authorized and allowed a breach of his said contract with these plaintiffs. That as a result thereof these plaintiffs operated their said bakery at a loss after said grocery store started selling bakery products under their lease. That had the defendant prohibited the said grocery store and its owner from selling bakery products in violation of the contract between these plaintiffs and defendant the sales of said bakery products sold at said grocery store would have been sold by these plaintiffs and would have made the plaintiffs operate at a profit. That the plaintiffs are unable to attach a copy of said Moses lease at this time but that the same is within the knowledge of and possession of the defendant.

"Plaintiffs further allege that as a result of the breach of contract and violation of said lease by the defendant they were forced to close their doors after having suffered a loss in operation in the amount of $4,000.00 and the loss of their bakery fixtures in the amount of $3,000.00 and the loss of $600.00 on said truck. Plaintiffs allege that said loss was caused solely and exclusively by the hereinbefore stated breach of contract by the defendant. That after said plaintiffs were forced to close said business the said fixtures were stored by these plaintiffs and that they have been unable to sell the same for any figure whatever, although they have tried many times to sell the same. That said truck had a reasonable value of $1,000.00 at the time of the closing of said business. That said violation by the defendant caused these plaintiffs to become financially insolvent and in common language 'broke' the plaintiffs. That by reason thereof the plaintiffs have suffered a loss of $7,600.00."

Defendant, appellee Morris, filed an answer and cross petition. In the answer he denied all material allegations of the petition not admitted and set forth the provisions in the Moses lease which disclosed he gave the Moses lease subject to the bakery rights he had given to appellants, the Ducoins. The Moses lease then repeated the identical exclusive clause contained in the Ducoin lease. In appellee's cross petition he sought recovery of rentals claimed to be due and unpaid. We need give no consideration to the cross petition as rights thereunder are not involved in the instant appeal.

The first question is whether the demurrer to appellants' evidence was properly sustained.

Each lease provided the tenancy should not commence until the building was completed and possession was tendered by the landlord. Although appellants' lease contract was entered into first, they opened their bakery business in May, 1950, about one month after the Moses grocery store had started operations.

The appellant, Paul G. Ducoin, testified, in substance:

He purchased all new equipment for the bakery; when he started selling bakery products, Moses was operating; his room was the next room to the west of the Moses room; he paid $2,456.68 for fixtures and was obliged to sell them for the best offer, which was $1,000; he still retains the cash register for which he paid $270.00; he paid $425.00 for a refrigerator case but has received no offers for it; the truck he purchased for the business cost $1,668.12 and he sold it for the top offer of $1,000; he purchased a new neon sign for $350.00 and it had no resale value; the bakery products he sold in this location were baked each morning at his bakery located at 449 North St. Francis; by November, 1950, he was losing money at the new store; he did not know until about the middle of November that Moses was selling bakery products; he then called appellee by telephone and advised him if things were going to continue the way they were at that time, he would not be able to keep the place open, that he was losing too much money; he told appellee that Moses was selling bakery products and appellee told him to keep his place open, that he would do something about it; he told appellee he would keep the place open the rest of the week; he kept it open another week and paid the rent for the month of December; appellee did not stop the sale of bakery products by Moses; after he closed on Thanksgiving evening appellee came to see him; appellee advised appellant he could not close his place but had to keep it open for business; appellant advised appellee he could not do so as he would "lose his shirt" unless something was done about Moses selling bakery products; appellee was very angry and cursed but did not say whether he would stop sales of bakery products by Moses; he did not stop such sales; the way things were going appellant could not reopen; he was losing money each month on this business; he believed he could have carried on the business if the exclusive right to sell bakery products at this place had been enforced; he had refused to make the lease unless the exclusive clause was added to the lease, which was done; he kept some books on the business; he did not keep a record of the merchandise which was sent from their other bakery; he did not have records showing the receipts from this business and what went in and what went out; he had a record of the volume of goods that was sold at this place.

On cross-examination Ducoin testified in substance:

He kept one set of books for both of his places, this one and the bakery at 449 North St. Francis; he kept no record of the products sent to this store; he kept no records of merchandise he took there and the merchandise that was sold there; he knew from the sales made there that the amount was not enough to make the business pay; he had no record of what that store cost by itself; he went into the Moses grocery store a number of times each month between May and October, inclusive, but did not look around to see what kind of merchandise was being sold there and he at no time complained to Moses about his selling merchandise which conflicted with the bakery line; he did not look around in the Moses store to see what kind of goods Moses was handling as he did not think it was any of his business; he had changed help several times from May through November, 1950, having hired four different girls to operate the store; the business at this place was a small part of his entire business; it was "just like if he had an ice cream counter"; he knew he was not making enough sales there to pay the rent and help; he had told appellee that if he moved his fixtures out of the place he would have to pay storage and that he would just as soon pay the rent where they were; he paid the rent up to March, 1951, but did not pay the rent for March and April, 1951, while the fixtures remained in the place; he had continued paying the rent after the middle of November, 1950, because he supposed appellee would stop the Moses sales and that if Moses were stopped he could then reopen.

On redirect examination Ducoin further testified that after having paid the rent for December, 1950, and January and February, 1951, believing appellee would do something to stop the Moses sales and having obtained no word from appellee that he had done so, he paid no further rent.

One of appellants' witnesses was their competitor, Moses. The material portions of his testimony, in substance, were:

He sold cup cakes, doughnuts, pies, cakes, cinnamon rolls, and packaged cookies which were furnished to him by bakeries; he started operating the grocery store about April, 1950, and continued until the early part of April, 1951; the cellophane goods which he bought from the bread companies and sold included doughnuts, cookies, and cup cakes; Morris never told him he could not sell bakery products; he sold all the bakery products that he could; he

sold, exclusive of bread, about $40.00 or $60.00 worth of bakery products a month; his profit would run between 28% and 33⅓% on all cellophane bakery goods; Morris bought groceries at his place at least twice a month; he had a twenty foot bakery products' counter, which was located in one of the middle aisles; he did not believe a customer buying groceries in his store could fail to see the bakery counter.

On cross-examination Moses, in substance, testified:

Morris did not discuss the terms of his lease with him; he and his wife read it and signed it; they did not believe it prohibited their selling the kind of bakery products they were selling; he had seen Ducoin come into the front of their store for the purchase of cigarettes; he didn't believe there was anything to prevent Ducoin from seeing the bakery counter; he did not sell pies, but sold bakery goods wrapped in cellophane.

The testimony of appellants' other witness, Maxine Hampton, is not material on the issues presented by the appeal and need not be noted.

In view of portions of the record presented here it is not entirely clear whether some portions of the narrated evidence were adduced on direct, cross or redirect examination. Although abstracts should always clearly disclose that fact, failure to do so is not fatal on a demurrer to the evidence for the reason that on demurrer a court does not compare testimony on such examinations, unless the record clearly discloses a witness has positively repudiated his former testimony. That exception has no application here. In whatever examination the testimony was adduced it must be construed in the light most favorable to the party adducing it.

Before dealing with the admitted testimony we shall consider appellants' complaint concerning the exclusion of testimony relative to the difference in value of a lease containing an exclusive covenant for sale of bakery products and a lease without such a provision, or a lease containing such a covenant which the lessor fails to enforce. The trouble with appellants' complaint is they did not bring the purported testimony into the record by any method which enables this court to consider it on appellate review. Only the statement of their attorneys relative to what they proposed to prove by the witness is reflected in the record. That does not constitute the testimony of the witness. Appellants argue the trial court refused to let them introduce the oral testimony. That statement is

not quite accurate. The court sustained an objection to the testimony. That ruling did not prevent them making a proper offer of the testimony of the witness himself. His testimony was not brought into the record during the trial and was not presented on the hearing of the motion for a new trial.

It repeatedly has been decided an alleged error is not open to appellate review where, on the hearing of a motion for new trial, such evidence is not produced by affidavit, deposition, or oral testimony of the witness, as required by G. S. 1949, 60-3004, and the purported evidence is contained only in a proffer made by counsel during the trial in which he states what the evidence would be if the witness were permitted to testify. (*State v. Ball*, 110 Kan. 428, 204 Pac. 701; *Rusch v. Phillips Petroleum Co.*, 163 Kan. 11, 180 P. 2d 270; *Faber v. Byrle*, 171 Kan. 38, 229 P. 2d 718, and cases therein cited.)

Was the admitted testimony on the subject of damages sufficient to be submitted to the jury? On that point we must first inquire whether it established a breach of the exclusive covenant. We have no hesitancy in answering the last inquiry in the affirmative. It is true appellants' witness, Moses, testified he was selling cellophane bakery products. The lease did not differentiate between bakery products wrapped in cellophane and those not so wrapped. The fact the Moses products were wrapped in cellophane did not convert them into some other product. They remained bakery products. The lease gave appellants the sole right to sell them, with the exception of bread. In the exclusive clause appellee agreed not only that he would not sell or handle bakery products, but also that he would not permit the selling or handling of merchandise of the same character on the premises described, which included the place where Moses was operating. He breached the contract.

The next question is, did appellants' testimony establish with sufficient certainty that, as a result of the breach, they operated their bakery at a loss and that, except for the breach, they would have operated at a profit? That is what they alleged. The trial court concluded the evidence on that point was too speculative and conjectural and that any verdict for damages a jury might render on that theory and on the evidence adduced would be based on speculation and conjecture. It will serve no purpose to repeat the evidence. We think the evidence was insufficient

to establish a cause of action for loss of profits. Appellants, however, also claimed loss on fixtures and equipment, which the evidence established. The ruling on the demurrer to their evidence, therefore, is reversed. The district court did not err in overruling the motion for a new trial on the ground urged here, namely, improper exclusion of evidence and that ruling is affirmed. The cause is remanded with directions to overrule the demurrer.

WERTZ, J., not participating.

WEDELL, J. (concurring in part and dissenting in part): I agree the lessor, appellee, breached the exclusive covenant. However, in view of appellants' theory of their action as unequivocally disclosed by both the petition and the trial record, I cannot agree appellants are entitled to recover for loss on fixtures and equipment.

Appellants, of course, could not recover for loss of anticipated profits. That was no part of the damages claimed. The damages they sought to recover were (1) loss they sustained *in the operation of the business* and (2) loss on fixtures. The loss on fixtures constituted not direct but consequential damages. Manifestly, loss on fixtures was not recoverable so long as the business was a going concern. Such loss would be recoverable, under the theory of this action, only in the event it were first established that the income from the business was insufficient to cover the cost of operation and next, if it were further established, that the loss sustained in operating the business was caused by the breach of the covenant. No other theory could be evolved from their petition.

The original petition clearly alleged the breach caused them to operate at a loss; that the breach was the sole and exclusive cause for their financial insolvency. In order to make their theory doubly clear appellants asked they be granted, and were granted, leave to amend the petition at the end of paragraph two by adding ". . . which was operated at a profit until the breach of plaintiffs' lease by the defendant as hereinafter set out."

The trial court sustained the demurrer on the grounds appellants' evidence was too speculative and conjectural to show the breach was the cause for operating at a loss. It sustained the demurrer for the further reason that any verdict for damages a jury might render on the evidence adduced would be based on speculation and conjecture.

Was that ruling proper? Specifically stated, the first question is did appellants establish by other than speculative and conjectural evidence that their operating loss was caused by the appellee's breach? At the outset it is well to bear in mind this was not an old established business which had been operating at a profit over a period of time. This was a new business in a new locality. It is common knowledge many months, and sometimes years, are required to establish a solvent business in a new locality. There was not the slightest evidence this bakery business in this new locality, assuming it was properly operated, reasonably could be expected to operate without some loss within the brief period it existed. It was operated only from May, 1950, to the latter part of November, 1950, a period of not to exceed seven months. The fact it may have operated with some loss was not in itself evidence appellee's breach was the proximate cause of the loss.

No book records were kept of the amount of merchandise sent to this store from appellants' other bakery. There was no separation of the cost of making all the products at their other bakery and the cost of the particular products delivered to this store. Appellants kept only a record of the amount of the sales at this store. They testified that amount was insufficient to make it pay. That testimony, alone, however, does not prove the small sales by appellants were caused by appellee's breach of the exclusive covenant. There was no evidence whatever concerning the amount by which appellants failed to make operating expenses on this particular part of their business. Ducoin, appellant, was asked, "Do you have any record of what that store cost you by itself?" The answer was, "No, sir."

The petition alleged they operated at a profit until the exclusive covenant was breached. Appellants failed completely to prove this crucial fact in their lawsuit. In fact, in answer to this court's inquiry on oral argument they conceded with commendable frankness that they did not prove their business was operated at a profit before the breach.

The petition further alleged if Moses had not sold bakery products appellants would have sold the bakery products which he sold. The evidence disclosed Moses sold, exclusive of bread which he had a right to sell under appellants' lease contract, only cellophane wrapped products.

The petition also alleged if Moses had not been permitted to sell bakery products that fact ". . . would have made the plaintiffs operate at a profit." In an enlargement of the allegation the petition further stated that Moses sold approximately $25.00 worth of bakery products *per day*.

What was appellants' testimony on that vital subject? Moses, their own witness, testified he sold only from $40.00 to $60.00 worth of cellophane wrapped bakery products *per month* and that his profit thereon ranged from 28% to 33⅓%. On the basis of 28% of $40.00 and 33⅓% of $60.00, Moses made a daily profit of only about thirty-seven or sixty-seven cents per day on the cellophane wrapped products he sold. But this evidence fails to show appellants suffered even that small loss in operations by reason of appellee's breach. Appellant's testimony is burdened with the unwarranted presumption that customers who desired to purchase cellophane wrapped products would have purchased unwrapped similar products from appellants. As previously stated there was no testimony which tended to prove such a presumption. The presumption constitutes pure speculation.

Other speculative features of this case might be mentioned but I shall not pursue them.

From an early date this court has adhered to the established doctrine that damages recoverable for breach of contract are only those which are shown to be the direct and proximate result of the wrong complained of; that the cause of such damage may not be left open to speculation and conjecture (*Walrath v. Whittekind,* 26 Kan. 482; *Altman v. Miller,* 128 Kan. 120, 276 Pac. 289; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 303, 110 P. 2d 810; 15 Am. Jur., Damages § 51) and that damages which are remote, contingent, and speculative are not proper elements upon which to base the cause or extent of injury. A few of our cases are *Hogan v. Santa Fe Trail Transportation Co.,* 148 Kan. 720, 727-729, 85 P. 2d 28, 120 ALR 521; *Myers v. Shell Petroleum Corp.,* supra, p. 303; *McCracken v. Stewart,* 170 Kan. 129, 223 P. 2d 963.

It is true that in the instant case the appellant Ducoin testified that, except for the Moses sales, he believed he would have been able to operate at a profit. Concerning similar testimony in the McCracken case, *supra,* this court aptly said:

"This court has consistently held that damages cannot be established by statements of a witness based on mere opinion without regard to specific facts or knowledge upon which their opinions were based. Damages cannot be based on mere conjecture or speculation. See *Town Co. v. Leonard,* 46 Kan.

354, 26 Pac. 717. Before one may recover damages for loss of profits to an established general business, occasioned by the wrongful acts of another, it must be made to appear the business had been in successful operation for such period of time as to give it permanency and recognition, and that it was earning a profit which may reasonably be ascertained or approximated. See *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091. The prospective earning capacity that plaintiff lost as a result of this accident is too remote, speculative and uncertain as based on his mere opinion to be recoverable." (p. 136.)

On the record before us it appears far less speculative to believe it probably was the small volume of appellants' sales of their own products that caused them to operate at a loss rather than to believe the loss was caused by appellee's breach of the lease contract. It must be remembered appellants did not prove they operated at a profit before the breach, as they alleged. They did not prove by evidence other than of a most speculative character that, except for the breach, they would have remained financially solvent. Any verdict a jury might have rendered for operating loss on the basis of this record would have been based on pure guesswork. On this record appellants are not entitled to recover damages for loss of operating costs or for loss on fixtures, which latter loss would be recoverable only if it first had been shown appellee's breach caused appellants to operate at a loss.

I think the district court had a clear understanding of the theory of appellant's action, as reflected by the petition and the trial record; that it carefully analyzed the testimony and properly sustained the demurrer.

Price, J., joins in the foregoing concurring and dissenting opinion.